LEWANDOWSKI, and wife, Plaintiffs-Appellants, v. CON-
TINENTAL CASUALTY COMPANY, and another, De-
fendants-Respondents.

Supreme Court

*No. 76–063. Argued January 30, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 284.)

For the appellants there were briefs by *DeBardeleben & Snyder* of Park Falls, and oral argument by *Arthur DeBardeleben*.

For the respondents there was a brief by *Tinkham, Smith, Bliss, Patterson & Richards* of Wausau, and oral argument by *John Bliss*.

CONNOR T. HANSEN, J. On May 19, 1968, an automobile driven by Joseph A. Lewandowski was involved in an intersection accident in the city of Ashland. The driver of the second car was Gary Bratley, a police officer of the city of Ashland. Lewandowski was issued a traffic citation, which was subsequently dismissed. On the same day Lewandowski personally contacted Anich, a lawyer licensed to practice in Wisconsin, in regard to the traffic citation and his possible personal injury cause of action.[1] There is no question that Lewandowski retained Anich to represent him.

Anich did not file the summons and complaint and claim against the city within the period of the statute of limitations, thus barring any action against the city.

In April, 1974, the plaintiffs commenced the instant action against Anich and his insurer. Their complaint alleges that as a result of the negligence of Anich their

[1] Anich had previously represented Lewandowski on appeal in a personal injury action, *Lewandowski v. Preferred Risk Mut. Ins. Co.*, 33 Wis.2d 69, 146 N.W.2d 505 (1966).

claim for damages sustained as a result of the automobile collision was barred.

In an amended answer Anich categorically admitted he was negligent in failing to timely file and in permitting the statute of limitations to run. The amended answer, however, denied that such an action caused any loss to the plaintiffs, denied that the May, 1968, accident was caused by the negligence of Gary Bratley, the driver of the second vehicle, denied that Lewandowski was injured in the accident and alleged affirmative negligence in that action on the part of Lewandowski.

In order to resolve the issue of damages and because of the posture of this particular case, the trial court, in the exercise of its discretion, proceeded with the trial of the negligence action as between the drivers of the two vehicles.

At trial Joseph A. Lewandowski and Gary Bratley, the drivers of the two vehicles involved in the accident, testified to the facts of the collision. The accident occurred on May 19, 1968, a clear, sunny Sunday, at approximately 2:30 p.m., in the city of Ashland, at an intersection controlled by traffic lights.

Lewandowski testified that as he was driving west on Third street he noticed, at a distance of 150 feet from the intersection with Vaughn avenue, that the traffic light was red. He said he had slowed to about five miles per hour when the light changed to green. He started to accelerate and glanced to the right as he entered the intersection. As he did not see any cars approaching he continued to accelerate into the intersection. Lewandowski said he first saw the police car approaching from the right when he was in the center of the intersection. He estimated the squad car's distance from the intersection at that point as approximately 100 feet, but could not estimate its speed beyond saying that it was going fast. He said he continued to accelerate and pulled toward

the left curb of Third street to avoid a collision. He estimated his speed at approximately 17 miles per hour. The cars sideswiped one another just west of the intersection.

Bratley, the police officer who was driving the squad car, testified that he was patrolling on Highway 2, approximately seven or eight blocks from the intersection of Third and Vaughn, when he received a call to respond to an accident on Third street which involved personal injuries. He said that when responding to a call involving personal injury, department policy required activation of the red light and siren. He turned both on when he received the call and proceeded to Third street. He said he first saw Lewandowski's car five to ten feet east of the curb as he was driving south on Vaughn avenue about 150 feet north of the intersection. He said he thought Lewandowski had seen him because he was looking in Bratley's direction and as the nose of the car was pointed slightly downward he assumed Lewandowski was braking. He said he could not estimate his speed on Vaughn but did know that he had started to brake in mid-block because the traffic control light was against him. He said he signaled a right turn and was going 15 to 20 miles per hour as he entered the turn. He said Lewandowski proceeded through the intersection at the same time and at approximately the same speed. He agreed that the cars sideswiped just west of the intersection. He said Lewandowski was pulling toward the south lane of Third street and he was in the north lane. He said his car stopped about 35 feet from the intersection on the north side of the street and Lewandowski's car stopped about a car's length behind on the south side.

Bratley said he and another police officer returned to the scene about an hour and a half later. They measured a skid mark of 21 feet from the point Bratley began his turn to the point of impact and one of 36 feet from the impact to the point where his car stopped.

Both cars were driveable following the accident. Bratley stopped to talk with Lewandowski, both got out of their respective automobiles and neither appeared to be injured. Bratley advised Lewandowski to go to the police station and report the accident and then proceeded to the scene of the accident he had been called to investigate. Lewandowski drove both to the police station and to his mother's house, but could not remember which he went to first.

At the conclusion of the trial the trial court submitted a special verdict with the usual questions on negligence, causation and damages, and instructed the jury accordingly.

The jury found both Joseph Lewandowski and Gary Bratley causally negligent, assigned 65 percent of the negligence to Lewandowski and 35 percent to Bratley and determined the amount of damages.

When considering the various motions after verdict the trial court approved the jury's apportionment of negligence and in doing so stated:

"This Court has no difficulty in accepting the jury's conclusion as to this apportionment. It is not against the great weight and clear preponderance of the evidence. In the absence of the warning devices on the police car Lewandowski still had a somewhat limited duty to maintain a sufficient lookout even though the green light was in his favor. On his own testimony it must be inferred that he was negligent as to lookout. The movement of the police car was inconsistent with Lewandowski's testimony that, when he was in the middle of the intersection and first saw the police car, that it was about 100 feet north of the intersection. The physical facts of the collision do not support such a rate of speed as would be necessary to be consistent with Lewandowski's testimony. The collision was not very severe. Both cars were driven away. The record shows that the vehicle driven by Lewandowski was not repaired but that is not of great significance today when the costs of repairs are so great

that it is often not worth while [sic] to repair an old car."

As we view this case in which the plaintiffs were seeking recovery from the defendant-lawyer for alleged malpractice, the principal issue is whether the trial court erred or abused its discretion in submitting special verdict questions typical of those used on a trial of a motor vehicle accident case.

As evidenced by authorities from other jurisdictions and legal commentaries on the subject, the burden of proof and method of procedure in legal malpractice actions are questions of difficult resolution.

In the case before us, the question of whether the respondent was negligent is not an issue. His answer admits he was negligent. Also, as the respondent's negligence barred the appellants' cause of action against Bratley, the trial court found cause in the instant action against Anich as a matter of law.

The appropriate method of procedure to determine the amount of damages sustained by the appellants presents the more difficult question. The appellants' damages must be based upon bodily injuries, if any, sustained as a result of the automobile accident. Obviously the respondent did not cause such injuries. However, in this suit the appellant is not seeking damages for those alleged bodily injuries, but rather he is seeking damages for the loss of the right to bring suit to recover on a bodily injury claim. Clearly the respondent was the cause of any damages which resulted from the inability of the appellants to institute suit against Bratley. Here the respondent, Anich, denies that he was causally responsible for any damages sustained by the appellant because (1) the appellant, in fact, sustained no bodily injuries, and (2) the negligence attributable to the appellant in the automobile accident was greater than that attributable to the other driver, Bratley.

■

Because of the admission of negligence by the respondent, the trial court correctly found causation in this malpractice action as a matter of law. Nevertheless, to some extent in a legal malpractice suit, the plaintiff is compelled to prove two cases in a single proceeding.[2] The requirements of causation dictate that the merits of the malpractice action depend upon the merits of the original claim.

Under the facts of this case the trial court determined that the measure of damages in the present malpractice action against the respondent, Anich, would be the damages that would have been awarded to the appellants in an action against Bratley. We conclude that the trial court did not err or abuse its discretion in so proceeding with the trial in this case.

■

The rule most generally recognized in legal malpractice actions was recognized by both parties in this action, and is as follows:

"In an action against an attorney for negligence or violation of duty, the client has the burden of proving the existence of the relation of attorney and client, the acts constituting the alleged negligence, that the negligence was the proximate cause of the injury, and the fact and extent of the injury alleged. The last element mentioned often involves the burden of showing that, but for the negligence of the attorney, the client would have been successful in the prosecution or defense of an action."

7 Am. Jur. 2d, *Attorneys at Law*, sec. 188, at 156 (1963).

"In a malpractice action charging that an attorney's negligence in prosecuting a suit resulted in the loss of

---

[2] *Ramp v. St. Paul Fire and Marine Insurance Co.*, 254 So.2d 79 (La. App. 1971); *Christy v. Saliterman*, 288 Minn. 144, 179 N.W.2d 288 (1970); Comment, *The Standard of Proof of Causation in Legal Malpractice Cases*, 63 Cornell Law Review 666 (1978).

the client's claim, it has been recognized that the value of the lost claim, that is, the amount that would have been recovered by the client except for the attorney's negligence, is a proper element of damages. . . ." *Id.,* sec. 190, at 157.[3]

However, merely stating the rule does not resolve the issue raised by the parties, *i.e.,* the method or evidentiary procedure by which the client proves he would have been successful in the original action and the amount of damages.

Few are the cases decided in this jurisdiction in which this court has had an opportunity to consider the application of the general rule. In *General Acc. F. & L. Assur. Corp. v. Cosgrove,* 257 Wis. 25, 42 N.W.2d 155 (1950), the lawyer negligently precluded his client from appealing a judgment against it by failing to settle the bill of exceptions. The sole issue in the case was whether the client had been damaged. This court held that this was a question of law and that the burden of proof was on the client. The court reviewed the evidence presented in the original action, then said:

"Upon that state of the record the trial court held that there was no clear proof that the defendants would have been successful upon appeal of the former judgment and that therefore the appellant had failed to establish it had sustained damages through respondent's failure to settle the bill of exceptions and perfect its appeal. This appears to place a fairly heavy burden upon the plaintiff in this case, but, as pointed out by the trial court, the law is well established in the courts of this country. This burden plaintiff accepts." *Id.* at 28.

The court then considered the merits of an appeal from the first action and concluded that the client would not have prevailed on such an appeal. This type of analysis is difficult to apply to the instant action. In cases, such

---

[3] The same rule is given in an annotation on attorney's liability for negligence at 45 A.L.R.2d 5, sec. 5 (1956).

as *Cosgrove*, involving the loss of the right to appeal, the issue of damage requires the determination of a question of law—the question the client would have presented to the appellate court had he been able to appeal the original action. Such a question is decided, not on the basis of additional evidence, but on the court record and legal argument.

Similarly, a question of law is frequently all that is presented where the client was a defendant in the initial action and the lawyer failed to raise a meritorious defense. *See, e.g., Masters v. Dunstan*, 256 N.C. 520, 124 S.E.2d 574 (1962). Other lawyer malpractice cases have involved a failure to prosecute a contract action. Those cases required proof of the contract, the amount owed and the debtor's solvency, items that do not necessarily become more difficult to prove with the passage of time. *See, e.g.,* 7 Am. Jur. 2d, *supra*, sec. 176, at 150, 151.

Cases of other jurisdictions which involve the loss of a personal injury suit through a lawyer's malpractice all recognize the general rule. However, it is apparent the issue is approached with considerable difficulty especially in those few jurisdictions that have considered the proof of damages.[4]

In *Christy v. Saliterman*, 288 Minn. 144, 179 N.W.2d 288 (1970), the Minnesota Supreme Court considered a legal malpractice action against a lawyer who failed to file his client's medical malpractice action within the limitation period. The court stated:

---

[4] *See: Fuschetti v. Bierman*, 128 N.J. Super. 290, 319 Atl.2d 781 (1974); *Baker v. Beal*, 225 N.W.2d 106 (Iowa 1975); *Duncan v. Lord*, 409 Fed. Supp. 687 (E.D. Pa. 1976); *Hoppe v. Ranzini*, 158 N.J. Super. 158, 385 Atl.2d 913 (1978), and cases cited therein; *Walker v. Porter*, 44 Cal. App.3d 174, 118 Cal. Rptr. 468 (1974); Coggin, *Attorney Negligence . . . A Suit Within A Suit*, 60 West Va. Law Review 225 (1958); Comment, *A Modern Approach to the Legal Malpractice Tort*, 52 Indiana Law Journal 689 (1977).

"At the outset it should be observed that we are presented with two actions in one. Plaintiff had the burden of proof not only to show that defendant negligently breached his contract in permitting the statute of limitations to operate against plaintiff's claim but also to establish that he had a recoverable claim for malpractice against Dr. Cranston. . . ." *Id.* at 293.

It concluded that the lawyer's causal negligence could not be disputed and went on to review the medical malpractice claim.

That claim had been submitted to the jury by special verdict requiring the jury to find whether the doctor had been negligent, whether that negligence had caused the client's injuries, whether the client had been contributorily negligent as to those injuries and that amount of damages sustained by the client as a result of the doctor's negligence. The court reviewed the evidence on each of these points without questioning whether the special verdict procedure was correct. The court considered only what the evidence that was presented did prove, not what the evidence that might have been presented could have proved.

An example of the various approaches to the problem that have been used in other jurisdictions is *Sitton v. Clements*, 257 Fed. Supp. 63 (E.D. Tenn. 1966). There the court applied what might be termed the "what would have happened" theory. However, in *Sitton* the question of the original tort-feasor's liability was minimal as the client had been shot and his assailant had been convicted of simple assault. The client lost the right to bring a civil assault action through his lawyer's negligence and the court reduced the damages awarded by the jury because the client would not have been able to collect that sum from the original tort-feasor:

"If plaintiff's suit had been filed against Fuller and the jury had found in his favor, the amount of the award

may not have been considered excessive by the defendant in view of plaintiff's age, earning power and extremely serious injuries. But the rules of law in that case would not have been the same as in the present case. Liability in the present case is based upon the theory that defendant breached his contract in negligently failing to institute suit within one year from the date of the accrual of plaintiff's cause of action against Fuller. The burden of proof was upon plaintiff not only to show that the defendant negligently breached his contract, but also if suit had been instituted he could have recovered a judgment from the defendant, the amount of such judgment, and that defendant was solvent." *Id.* at 67.

The court did not discuss the verdict form beyond noting that the jury was told the plaintiff had the burden of proving he was entitled to damages from the original tort-feasor.

Regardless of the approach used to resolve the issue of liability and damages in a legal malpractice case the ultimate goal should be to determine what the outcome *should* have been if the issue had been properly presented in the first instance. We agree with the determination of the trial court to use a special verdict in the automobile accident case in the case at bar.

The general rule should be adapted to the facts of the particular case so that it effects a fair balance between the rights and burdens of both the client and the lawyer who negligently conducts litigation on his client's behalf. Situations can be readily conceived where it would be difficult to determine the value of an original action which could not be tried, but it is the duty of the courts to fashion a remedy as best they can when those situations are presented.

Under the facts of this case it is our conclusion that the trial court chose the appropriate methodology to resolve the issue in this case. In the final analysis, whether the appellants had been damaged by the respondent's

failure to timely file suit against Bratley could only be determined after a trial involving the question of whether the negligence of Bratley was greater than that of the appellants. This was a jury question. The nature of the automobile accident and availability of witnesses presented a situation where the issue could best be resolved in the manner adopted in this litigation. In this case we find no reason why the appellant could not litigate his former cause of action to prove his loss. The trial court did not abuse its discretion or commit error in so proceeding.

On this appeal the appellants raise several other issues. They argue that the apportionment of causal negligence by the jury was against the great weight and clear preponderance of the evidence. They contend that the trial court committed reversible error in giving the jury the so-called modified Allen instruction;[5] allowing testimony from the police report of the accident; allowing admission of evidence regarding the traffic citation; and in permitting the defense counsel to ask leading questions on direct examination and to introduce immaterial evidence.

We have examined the record and considered each of the foregoing issues. In our opinion they are not persuasive and neither individually nor cumulatively constitute grounds for a holding of reversible error. We believe a detailed discussion of each of them would be of little or no precedential value.

The appellants also ask for a discretionary reversal under sec. 751.06, Stats. (formerly sec. 251.09, Stats. 1975). From our examination of the record we are of the opinion the issues presented in this case were fairly and fully tried. We do not believe justice has for any

[5] *See:* Wis. JI—Civil, Part I, 195; *Quarles v. State,* 70 Wis.2d 87, 233 N.W.2d 401 (1975); *Kelley v. State,* 51 Wis.2d 641, 187 N.W.2d 810 (1971).

reason miscarried or that a new trial is necessary to accomplish the ends of justice. The judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.

DAY, J., took no part.