Osie Cook, Jr., and Lisa A. Cook, Plaintiffs-Appellants-Cross Respondents,†

v.

Continental Casualty Company, Michael F. Hupy, National Union Fire Insurance Company of Pittsburgh and Hausmann-McNally, S.C., Defendants-Respondents-Cross Appellants.†

Court of Appeals

*No. 92–1130. Submitted on briefs April 13, 1993.—Decided November 16, 1993.*

(Also reported in 509 N.W.2d 100.)

†Petition to review denied.
†Petition to review denied.

238

For plaintiffs-appellants-cross respondents the cause was submitted on the briefs of *James J. Murphy* of *Gillick, Murphy, Wicht & Prachthauser*, of Milwaukee, Wisconsin.

For defendants-respondents-cross appellants Michael F. Hupy and Continental Casualty Company, the cause was submitted on the briefs of *Edward A. Hannan* and *Michael Aldana* of *Godfrey, Braun & Hayes*, of Milwaukee.

For defendants-respondents-cross appellants National Union Fire Insurance Company of Pittsburgh and Hausmann-McNally, S.C., the cause was submitted on the briefs of *Stephen P. Juech, Michael J. Collard*, and *John P. Spector*, of *Frisch, Dudek, Ltd.*, of Milwaukee.

■■■■■■■■■■■

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Osie Cook appeals from a summary judgment dismissing his complaint for legal malpractice against Attorney Michael F. Hupy, Hupy's former law firm, and their respective liability insurers (collectively, "Hupy"). Hupy had previously represented Cook in a products liability action. Cook alleges that Hupy was negligent for failure to identify certain fact witnesses and for his failure to call them for his case-in-chief in that underlying action. We conclude that because the trial court granted summary judgment based upon an erroneous conclusion of law regarding the duty of an attorney, summary judgment must be reversed.

On appeal, Cook argues that the trial court erred when it determined, prior to summary judgment, that expert witnesses would be precluded from testifying on causation at the trial on legal malpractice. Hupy cross-appeals, arguing that the trial court erred in determining that damages assessed in the underlying action would not be at issue in the malpractice trial. We affirm the trial court's decision to preclude expert testimony. We reverse the trial court on the issue of damages, however, and conclude that the issue of damages must be retried.

## BACKGROUND

Cook was employed as an over-the-road driver for a trucking company. In July 1983, he sustained a back injury when he fell while attempting to climb onto the top his truck to adjust hoses that provided lighting for the vehicle. Cook had slipped from a small, oval-shaped, fold-down step manufactured and sold by

Navistar. Cook retained Hupy to pursue a personal injury claim against Navistar.

That personal injury action was tried to the United States District Court for the Southern District of Indiana. The jury found that the oval step was an unreasonably dangerous product and assessed damages in excess of $2 million. Cook, however, was unable to recover any of the jury's award because the jury had found him to be 60% causally negligent.[1]

Cook's amended complaint alleges that Hupy breached his duty of care in his legal representation by failing to produce, as witnesses, other truck drivers who had similar experiences on the same kind of step. Cook contends that the testimony of these witnesses would have rebutted Navistar's argument that Cook was contributorily negligent in climbing the truck. The trial court granted Hupy's motion for summary judgment. Cook appeals.

## SUMMARY JUDGMENT

Our review of a trial court's grant of summary judgment is *de novo. Capitol Indem. v. Reasbeck*, 166 Wis. 2d 332, 336, 479 N.W.2d 247, 249 (Ct. App. 1991). We apply the standards set forth in sec. 802.08(2),

---

[1] The case, applying Wisconsin substantive law, was governed by the applicable comparative negligence statute, sec. 895.045, Stats., which provides:

> **Contributory negligence.** Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

Stats., in the same manner as the trial court. *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). The summary judgment analysis was fully explained in *Voss*, and need not be repeated here. *See id.* at 747-48, 470 N.W.2d at 628-29.

The trial court granted summary judgment to Hupy, concluding as a matter of law that Hupy had fulfilled his duty of care to Cook. Although the trial court had found Hupy to be "negligent" in his investigation of the other truck drivers, it held that such negligence was "superfluous" because Hupy had proven a *prima facie* case against Navistar and had acted in good faith. We conclude that the trial court's definition of an attorney's duty ignores the standard of care an attorney must fulfill, and thus, summary judgment was improper. *See Germanotta v. Nat'l Indem. Co.*, 119 Wis. 2d 293, 297, 349 N.W.2d 733, 735 (Ct. App. 1984) (we reverse trial court's grant of summary judgment where based on erroneous legal conclusion).

In a negligence action, three elements must be proven: "[a] duty; a breach of that duty; and resulting damages."[2] *Schicker v. Leick*, 40 Wis. 2d 295, 299, 162 N.W.2d 66, 69 (1968). Whether a duty exists is a question of law to be determined by the court. *Id.* "It is a lawyer's duty, in rendering legal services to a client, to exercise that degree of care, skill, and judgment which is usually exercised under like or similar circum-

[2] To establish legal malpractice, a plaintiff must prove the following elements: (1) existence of an attorney-client relationship; (2) acts or omissions constituting negligence; (3) causation; and, (4) damages. *Lewandowski v. Continental Cas. Co.*, 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979); *Estate of Campbell v. Chaney*, 169 Wis. 2d 399, 405, 485 N.W.2d 421, 423 (Ct. App. 1992).

stances by lawyers licensed to practice in this state." Wis J I—Civil 1023.5. *See also Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 111, 362 N.W.2d 118, 128 (1985). A lawyer is "not held to a standard of perfection or infallibility of judgment," but must "exercise his best judgment in light of his education and experience." *Helmbrecht*, 122 Wis. 2d at 111, 362 N.W.2d at 128. " 'Judgment ·involves a reasoned process which presumes the accumulation of all available pertinent facts. . . .' " *Id* . at 117, 362 N.W.2d at 131 (quoting *Glenna v. Sullivan*, 245 N.W.2d 869, 873 (Minn. 1976) (Todd, J., concurring)). Generally, an attorney is not liable for errors in judgment that are made in good faith, are well-founded, and are in the best interests of the client. *Helmbrecht*, 122 Wis. 2d at 117, 362 N.W.2d at 130-31.

Where an attorney has failed to exercise reasonable care and professional skill in making such a judgment, the attorney may be held liable for legal malpractice. *See Helmbrecht*, 122 Wis. 2d at 111-18, 362 N.W.2d at 127-31. Whether the attorney has breached the applicable standard of care in representing the client "is a question of fact to be determined through expert testimony and usually cannot be decided as a matter of law." *Gelsomino v. Gorov*, 502 N.E.2d 264, 267 (Ill. App. Ct. 1986).

"Expert testimony is generally necessary in legal malpractice cases to establish the parameters of acceptable professional conduct, given the underlying fact situation. Expert testimony is not required in cases where the breach is so obvious that it may be determined by the court as a matter of law. . . ." *Helmbrecht*, 122 Wis. 2d at 112, 362 N.W.2d at 128; *see also Olfe v.*

246

*Gordon*, 93 Wis. 2d 173, 180-82, 286 N.W.2d 573, 576-77 (1980). "To hold that a person is not negligent as a matter of law, the court must be able to say that no properly instructed, reasonable jury could find, based upon the facts presented, that the defendants failed to exercise ordinary care." *Ceplina v. South Milwaukee Sch. Bd.*, 73 Wis. 2d 338, 342, 243 N.W.2d 183, 185 (1976).

While we take no position as to whether Hupy's alleged conduct breached the standard of care, we conclude that such conduct is not "so obvious that it may be determined by the court as a matter of law" that Hupy was not negligent. Of the four drivers whose names Cook gave to Hupy, only one was contacted by Hupy before trial, and another was placed on the witness list, but was never contacted. None of the drivers testified in Hupy's case-in-chief. Apparently, Hupy tried to bring the testimony of two of the drivers in on rebuttal, but the federal district court excluded their testimony, asking Hupy, "Why is that rebuttal and not part of your case-in-chief?" Cook argues that these drivers were ready to give critical testimony regarding slips they experienced on the same kind of step using the same climbing method that Cook had used when he fell from the truck. Such testimony, he asserts, would have rebutted Navistar's argument that he was contributorily negligent, which, in turn, would have allowed him to recover some, if not all, of the damages.

In his own defense, Hupy asserts that his pretrial investigation into the testimony of these drivers was sufficient and that he made a good faith tactical decision in not presenting their testimony. He argues that such testimony would have amounted to collateral, cumulative evidence, and thus, was not necessary to prove the case against Navistar.

247

The question of whether an attorney's conduct fell below the applicable standard of care can rarely be disposed of on a motion for summary judgment where the case is basically factual and largely depends on oral testimony. *See Balcom v. Royal Ins. Co.*, 40 Wis. 2d 351, 357, 161 N.W.2d 918, 921 (1968); *Ceplina,* 73 Wis. 2d at 342-43, 243 N.W.2d at 185 (summary judgment rarely granted in negligence cases). In any event, there is no authority to support the trial court's conclusion that an attorney's duty is fulfilled as a matter of law once he or she presents a *prima facie* case.[3]

Because the trial court erred in its definition of an attorney's duty and in its application of that standard of care to the facts of this case, summary judgment is reversed.

## TRIAL METHODOLOGY

Because we have concluded that the cause must be remanded for trial, we address the issues that pertain to the manner in which the trial will be conducted. Prior to making the summary judgment determina-

---

[3] The trial court's reliance on *Bolte v. Joy*, 150 Wis. 2d 744, 443 N.W.2d 23 (Ct. App. 1989), for this proposition is erroneous. In *Bolte*, the trial court granted summary judgment to the defendant-attorney on plaintiff's legal malpractice action. *Id.* at 746, 443 N.W.2d at 24. The issue in *Bolte*, however, was not whether the attorney had breached the standard of care, but rather whether Bolte's injuries were too remote from the attorney's negligence such that allowing recovery would be contrary to public policy. *See id.* at 747, 443 N.W.2d at 24. The trial court in the instant case did not base any part of its summary judgment on public policy, and thus, we decline to address the issue here.

tion, the trial court ruled on the parties' pretrial motions regarding certain procedural aspects of the legal malpractice trial. The trial court precluded any expert testimony on causation, and instead, ordered that the issue of causation be presented through a reading of relevant portions of the transcript from the underlying suit, and, in addition, through the live testimony of the truck drivers who did not testify in that original action. The court also ordered that because the original jury had already determined that Cook had suffered approximately $2 million in damages, that issue need not be relitigated.

Cook argues on appeal that he should not be precluded from introducing expert testimony on the element of causation. In his cross-appeal, Hupy argues that he should not be precluded from contesting the original jury determination of damages. We affirm the trial court's decision on the issue of expert testimony, but reverse the trial court's decision that damages need not be retried.

Upon remand, Cook must prove not only that Hupy was negligent, but also that " 'the negligence was the proximate cause of the injury, and the fact and extent of the injury alleged.' " *Lewandowski v. Continental Cas. Co.*, 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979) (citation omitted). The Wisconsin Supreme Court has explained:

> To establish causation and injury in a legal malpractice action, the plaintiff is often compelled to prove the equivalent of two cases in a single proceeding or what has been referred to as a "suit within a suit." This entails establishing that, " 'but for the negligence of the attorney, the client would

249

have been successful in the prosecution or defense of an action.' "

*Glamann v. St. Paul Fire & Marine Ins.*, 144 Wis. 2d 865, 870, 424 N.W.2d 924, 926 (1988) (citations omitted). There must first be a determination that the lawyer was negligent, *Lewandowski*, 88 Wis. 2d at 277, 276 N.W.2d at 287, that is, whether he or she violated the duty "to exercise a reasonable degree of professional care, skill, and knowledge," *Peck v. Meda-Care Ambulance Corp.*, 156 Wis. 2d 662, 669, 457 N.W.2d 538, 541 (Ct. App. 1990). If the jury determines that the lawyer fulfilled this standard of care, that ends the case. If, however, the jury determines that the lawyer was negligent, the case moves on to the second phase, the so-called "suit within a suit," to determine whether the client was, in fact, damaged by that negligence. *See Glamann*, 144 Wis. 2d at 870, 424 N.W.2d at 926. Thus, the ultimate goal of the "suit within a suit" is to "determine what the outcome *should* have been if the issue had been properly presented in the first instance." *Lewandowski*, 88 Wis. 2d at 281, 276 N.W.2d at 289. That determination, however, does not require that the jury in the malpractice action determine what the *actual* jury in the underlying action would have done; rather, the second jury is to determine what a *reasonable* jury would have done if the case had been tried differently. *Helmbrecht*, 122 Wis. 2d at 107, 362 N.W.2d at 126. Thus, the jury in the malpractice action is permitted to substitute its own judgment for that of the jury in the underlying action. *Id.*

Cook alleges that Hupy's failure to present all necessary witnesses prevented the jury from reaching a proper apportionment of negligence. To prove that allegation, Cook must establish that if Hupy had presented that additional evidence, a reasonable jury would have

arrived at a more favorable apportionment of negligence. The trial court concluded that the best way to try causation and damages was to allow the second jury to determine the apportionment of negligence from the evidence as presented in the original action against Navistar, plus the additional testimony of the truck drivers who had not been called to testify at that trial.

If the second jury determination is more favorable to Cook than the first jury verdict, and the only change in the evidence was the inclusion of the additional testimony, causation will have been established. Cook will have proven that the failure to include that additional evidence in the earlier trial caused the original jury to apportion a higher percentage of negligence to him.

Cook does not take issue with the trial court's decision to present the case to the jury through the use of the evidence presented at the previous trial, coupled with the testimony of the other truck drivers. Cook argues, however, that the trial court erred when it concluded that no expert testimony would be admitted to prove the causation element of the legal malpractice claim. We disagree.

The trial court's decision to not allow expert testimony on causation is consistent with its trial methodology. "While, in theory, the present jury should determine what an earlier jury would have done, as a practical matter the trial cannot be so conducted. All issues touching upon plaintiff's personal injury action will be submitted to the jury as matters of first impression." *Fuschetti v. Bierman*, 319 A.2d 781, 785 (N.J. Super. Ct. Law Div. 1974). Because the second jury is not being asked to decide what the original jury would have done, expert testimony on the behavior of that

251

particular jury or any other jury is irrelevant. *See Helmbrecht*, 122 Wis. 2d at 107, 362 N.W.2d at 126.

In the present case, the jury need only be given evidence that is relevant to their task of apportioning negligence between Cook and Navistar. What the previous jury did, or should have done, becomes irrelevant where the present jury is deciding the issue independently. Under the trial court's trial methodology, the only question regarding causation is how does *this* jury believe that negligence should be apportioned between Cook and Navistar. When the trial court compares the jury's verdict on that question to the original apportionment verdict, it will be able determine whether Hupy's alleged negligence caused an injury to Cook.

Hupy, in his cross-appeal, argues that although the trial court correctly decided the methodology to be used to determine causation, it incorrectly decided that the amount of Cook's personal injuries would not be retried to this jury. Hupy argues that by setting the value of Cook's personal injuries at the amount determined by the original jury, the trial court has precluded him from arguing the issue of damages. We agree that Hupy should not be bound by the first jury's apportionment of damages.

A trial is like a painting—if one aspect of the painting changes, the other aspects may change as well. Likewise, if the additional evidence at trial regarding the apportionment of negligence had been included in the initial trial, that first jury's assessment of damages may also have changed. Because the ultimate goal of the "suit within a suit" is to determine what a *reasonable* jury would have done if the case had been properly presented, reassessment of damages is required.

252

Furthermore, at the first products-liability trial, Hupy was arguing for a high award of damages. His position in a malpractice trial would be the opposite"that is, for a lower assessment of damages. If we assume, for the purposes of this argument, that Hupy was superb in arguing damages at the products-liability trial, to prohibit him from rearguing damages at the malpractice trial would, in effect, penalize him for exceeding the standard of reasonable professional competence in the products-liability trial. For these reasons, we hold that the "suit within a suit" must include a reassessment of Cook's damages.

Finally, this case should be tried in a bifurcated proceeding upon remand. The first issue that must be resolved is whether Hupy breached the standard of care toward Cook, and, if so, the second proceeding would consist of retrying the relevant portions of the underlying personal injury claim against Navistar.

*By the Court.*—Judgment reversed and cause remanded.