COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP129**

Cir. Ct. No.  **2017CV5927**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

LANARIUS T. HODGES,

PLAINTIFF-APPELLANT,

V.

MICHAEL L. CHERNIN,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Reversed and cause remanded for further proceedings.*

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Lanarius T. Hodges, *pro se*, appeals an order of the trial court granting Michael L. Chernin's motion for summary judgment dismissing Hodges' action against Chernin.  Hodges' complaint alleged claims for legal malpractice, fraud, and breach of fiduciary duty against Chernin.[1]

¶2    Essentially this case arises from Hodges' allegations that, at the request of Hussein Govani, Chernin convinced Hodges to sign a release of potential personal injury claims arising from injuries that Hodges sustained in a shooting incident at a tavern owned by Govani.  Hodges alleges that at the same time, Chernin was also representing Hodges in an unrelated criminal case, at the behest of Govani.

¶3    Chernin brought a motion for summary judgment seeking dismissal of Hodges' complaint in this action.  In support of his motion, Chernin submitted an affidavit in which he averred that a certain disc contained recorded phone calls that Hodges made while he was in custody in the Milwaukee County Jail.  He then asserted that statements that Hodges made in the phone calls clearly showed that Hodges understood that by signing the release he would be giving up any potential claims that he had arising from the tavern shooting.  Chernin then argued that, because Hodges understood the effect of his signing the release, Chernin could not have been the "proximate cause" of any injuries Hodges suffered as a result of signing the release.

---

[1] The pleadings and briefs of both parties are confusing regarding the claims and facts involved in this case.  Both parties make assertions in their briefs that are not contained in any affidavit or supporting document.  Like the trial court, because Hodges is proceeding *pro se*, we liberally construe his pleadings and conclude that he did allege those claims.

¶4    The trial court based its decision granting the motion for summary judgment exclusively on the contents of the disc Chernin submitted. It stated that, as a result of Hodges' knowledge of the effect of the release, the "causation chain" in each of Hodges' claims "is broken." This appeal followed.

¶5    We conclude that the trial court erred in relying on Chernin's affidavit in finding that the disc constituted admissible evidence for the purpose of his summary judgment motion because Chernin lacked the requisite personal knowledge to support his averments in his affidavit. Therefore, we reverse the trial court's order granting Chernin's motion for summary judgment.

## BACKGROUND

### *Hodges' criminal case*

¶6    On November 6, 2013, in Milwaukee County Circuit Court case No. 2013CF5055, prior to the tavern shooting, the State charged Hodges with first-degree recklessly endangering safety with use of a dangerous weapon, two counts of possession of a firearm by a person adjudged delinquent, and endangering safety with reckless use of a firearm, and a warrant was issued for Hodges' arrest.[2]

¶7    The warrant was executed on November 19, 2013, and Hodges was taken into custody. On November 23, 2013, Chernin represented Hodges at his

---

[2] In this background section we have included facts that relate to two criminal cases against Hodges, and Hodges' personal injury lawsuit arising from the tavern shooting. We obtained some of the facts from the Wisconsin Consolidated Court Automation Programs (CCAP) record, an online case management system reflecting information entered by court staff, of which this court may take judicial notice. *See **Kirk v. Credit Acceptance Corp***, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

3

initial appearance in case No. 2013CF5055.[3] He withdrew as Hodges' trial counsel on January 23, 2015, before the matter proceeded to a jury trial on April 27, 2015.

### *Hodges' complaint against Chernin in this action*

¶8     In his complaint in this case, filed on July 17, 2017, Hodges alleged that on November 17, 2013, he was shot five times inside a tavern owned by Govani and that, as a result of the shooting, he had personal injury claims against Govani.[4] He also alleged that, at the time of the shooting, Chernin was representing Govani on an unrelated civil case. Hodges further alleged that Chernin came to the hospital where he was being treated for his injuries from the tavern shooting, that Chernin told Hodges that he would be representing him in the criminal case, and that Chernin told him that "the [tavern] owners sent Chernin to become [Hodges'] attorney."

¶9     Hodges further alleged that, later while he was being held in the Milwaukee County Jail for the charges in the criminal case, Chernin came to the jail and, on December 30, 2013, Chernin convinced Hodges to execute a release of all potential claims against Govani arising from the tavern shooting. Hodges also

---

[3] In his appellate brief, Chernin states that he also represented Hodges in case No. 2014CF3587, in which the State alleged that Hodges "attempted to elicit others to appear in [case No. 2013CF5055] to commit perjury." CCAP does not have a separate record regarding case No. 2014CF3587. However, the CCAP record for case No. 2013CF5055 contains a September 9, 2014 entry stating that both cases were consolidated. We refer to the consolidated case as "the criminal case".

[4] Hodges did in fact file a personal injury lawsuit against Govani as a result of that shooting. The CCAP record in the personal injury lawsuit states that on January 6, 2016, the attorney representing Hodges in that lawsuit advised the Milwaukee County Circuit Court that the lawsuit had been settled; the lawsuit was subsequently dismissed. According to CCAP, Chernin was not counsel of record for any party in that lawsuit.

alleged that Govani sought to have Hodges sign a release of all potential claims arising from the shooting incident at Govani's tavern, that Chernin was acting on behalf of Govani when Chernin convinced Hodges to sign the release, and that Govani paid Chernin $10,000 for getting Hodges to sign the release.

### Procedural history in this case

¶10    The summons and complaint in this case were filed on July 17, 2017, and a copy was personally served on Chernin by the Milwaukee County Sheriff's Office on August 5, 2017.

¶11    Hodges filed a "Declaration for Default" on August 30, 2017. Chernin filed a single document entitled "Motion, Affirmative Defenses & Answer" on September 13, 2017. Hodges then filed a motion for default judgment, along with written interrogatories, and requests for production of documents on October 4, 2017.

¶12    At an October 19, 2017 hearing on Hodges' motion for default judgment, Chernin asked the trial court to retroactively extend the time for him to file an answer to September 13, 2017—the date Chernin filed his answer. Hodges opposed Chernin's motion and argued that he was entitled to default judgment. The trial court denied Hodges' motion for default judgment and granted Chernin's motion to extend the time for filing his answer.[5]

---

[5] Hodges did not appeal the trial court's denial of his motion for default judgment.

¶13 Hodges then raised the issue that Chernin had not answered his discovery requests that were due in "three or four days."[6] Chernin orally moved the trial court to stay the time for him to answer Hodges' discovery requests until after Chernin filed a motion to dismiss the complaint. The trial court granted Chernin's request for the stay of discovery, and then scheduled a hearing on Chernin's motion to dismiss on December 22, 2017.

*Chernin's motion to dismiss*

¶14 On November 9, 2017, Chernin filed a motion to dismiss asserting that Hodges' complaint appeared to allege two enumerated causes of action—legal malpractice and fraud—but that the complaint failed to allege sufficient facts to allege either claim.

¶15 In his affidavit in opposition to the motion to dismiss, Hodges averred that (1) while he was being held in custody at the jail on the criminal case, Chernin came to see him on December 30, 2013; (2) Chernin had the release in his possession at that time; and (3) Chernin convinced Hodges to sign the release whereby Hodges released all of his potential claims against Govani arising from the shooting incident.

¶16 The trial court denied Chernin's motion to dismiss. The trial court stated that "[i]f it were true, [Chernin], that behind the scenes you were acting in

---

[6] Basically, Hodges's discovery requests dealt with Chernin's representation of Govani, whether Chernin was involved in representing Govani in preparing the release and having Hodges sign the release, whether Govani paid Chernin to represent Hodges in the criminal case, and whether Govani paid Chernin for drafting the release and having Hodges sign the release.

6

furtherance of Homestyle Restaurant Group, LLC,[7] in a civil action while at the same time representing [Hodges] in a criminal action, that would be a nonwaivable [sic] conflict of interest." The trial court then explained that "I am to find [sic] [confined] to the four corners of the pleadings at this stage and can't say as a matter of law at this point that [Hodges'] claim fails to state a claim upon which relief can be granted."

¶17    The trial court further stated:

> In order to state a claim for legal malpractice, you have to establish he was your attorney which I think your pleadings do, you have to establish that there was a breach of his duties which I think you've at least alleged but you also have to establish a harm and damages[.]

The trial court then held that the paragraph in Hodges' complaint that alleged he would have proceeded to trial in his personal injury lawsuit involving the tavern shooting if Chernin had not taken action on behalf of Govani regarding the release, which caused Hodges to settle the civil case for less than its true value was "enough to get passed [sic] [past] the pleading[] stage."

*Chernin's motion for summary judgment*

¶18    In March 2018, Chernin filed a motion for summary judgment and a brief, an affidavit, and a disc in support of his motion for summary judgment. In his affidavit, Chernin averred that he had represented Hodges in the criminal case, that as a part of the discovery materials in the criminal case, the prosecutor produced a disc that contained telephone calls placed by Hodges while he was in

---

[7] This is one of the entities named as a defendant in Hodges' personal injury lawsuit arising from the tavern shooting.

the jail, and that the accompanying disc contained actual recorded telephone calls that Hodges made between November 24, 2013, and January 3, 2014, while he was in custody in the jail.

¶19     Chernin argued that Hodges' statements in the recorded phone calls clearly showed that Hodges knew that, by signing the release, he would be giving up any potential claims that he had resulting from the tavern shooting.  Chernin further argued that, because Hodges understood the effect of his signing the release, Chernin could not have been the proximate cause of any injuries that Hodges claimed as a result of Hodges signing the release and, therefore, he was entitled to summary judgment.

¶20     In rendering its decision granting Chernin's motion for summary judgment, the trial court relied exclusively upon Hodges' alleged statements contained in the jail calls.  It stated that "Chernin has submitted this disc with the jail calls.  He has sworn under oath that it's an accurate, unaltered copy of that disc.  I can accept a copy."  It went on to state that Hodges's statements contained in the disc show that he understood what the release meant.  It then concluded that as a result of his knowledge of the effect of the release the "causation chain" of each claim "is broken."

¶21     This appeal followed.

**STANDARD OF REVIEW**

¶22     We review a grant of summary judgment *de novo*, using the same methodology as the trial court.  *See **Hardy v. Hoefferle***, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.  Summary judgment is appropriate where there is no genuine issue of material fact and "the moving party is entitled to judgment

8

as a matter of law." WIS. STAT. § 802.08(2) (2017-18).[8]  Affidavits in support of and in opposition to a motion for summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence."  Sec. 802.08(3).

¶23     "We owe no deference to the trial court's determination, and we will reverse a summary judgment if the trial court incorrectly decided a legal issue or if material facts were in dispute[.]"  *See* ***BMO Harris Bank, N.A. v. European Motor Works***, 2016 WI App 91, ¶14, 372 Wis. 2d 656, 889 N.W.2d 165 (internal citations omitted).  "We examine the moving party's submissions to determine whether they constitute a prima facie case for summary judgment."  *See* ***Palisades Collection LLC v. Kalal***, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.

## DISCUSSION

¶24     In evaluating whether Chernin made a prima facie case in support of his motion for summary judgment, the trial court made the specific finding that Chernin had sworn under oath that the disc with the jail calls was "an accurate, unaltered copy of the disc" that he received from the prosecutor in Hodges' criminal case.  The trial court further stated that "I can accept a copy of it."

¶25     The trial court then told Hodges that "you have sworn under oath that [the disc] is not accurate but you haven't given me any facts, any evidence, any factual evidence, to support that claim.  Your sort of just bald assertion that it's not accurate does not raise a triable issue of material fact."

---

[8] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

9

¶26     The trial court went on to say that her "clerk" listened to the disc and prepared a transcript of the disc that the trial court read.  The trial court then found that the statements on the disc "unequivocally show that there's no disputed material facts that [Hodges] understood what the release meant.  [Hodges] understood it would preclude [Hodges] from getting any other money beyond this bail money out of the civil case … [Hodges] thought maybe [he] could get it not to stick[.]"[9]

¶27     The trial court then found that, because Hodges knew and understood what he was doing when he signed the release "the causation chain [was] broken" for each of his claims—legal malpractice, fraud, and breach of fiduciary duty.[10]  The trial court's findings and conclusions were based on Chernin's affidavit and the disc with the jail calls.  However, in reaching its conclusion, the trial court applied the wrong standard when deciding a motion for summary judgment.  The issue was not whether the trial court could accept a copy of the disc—the issue was whether Chernin's affidavit was sufficient to render the disc admissible in evidence.

---

[9] Chernin argues that Hodges borrowed money from Govani in order to pay his bail in the criminal case and that, in exchange, Govani sought to have Hodges sign a release of any potential personal injury claims for injuries arising out of the shooting at Govani's tavern.

[10] To establish legal malpractice, a plaintiff must prove the existence of an attorney-client relationship, acts or omissions constituting negligence, *causation*, and damages.  *See Cook v. Continental Cas. Co.*, 180 Wis. 2d 237, 245 n.2, 509 N.W.2d 100 (Ct. App. 1993).  "Wisconsin recognizes three common law categories of misrepresentation:  intentional, strict responsibility, and negligent misrepresentation.  All three require that the defendant made an untrue representation of fact and that the plaintiff *relied* upon the representation."  *See* WIS JI—CIVIL 2400 (emphasis added).  "The elements of a claim for breach of fiduciary duty are:  (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty *caused* the plaintiff's damages."  *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶40, 312 Wis. 2d 251, 752 N.W.2d 800 (emphasis added).

10

¶28 We conclude that the trial court erred in holding that Chernin's submissions constitute a prima facie case for summary judgment. Chernin's affidavit was not "made on personal knowledge" and did not "set forth such evidentiary facts as would be admissible in evidence." *See* WIS. STAT. § 802.08(3). All that Chernin could say about the disc was that the prosecutor in the criminal case gave him the disc as part of the discovery materials in that case. Chernin has no personal knowledge of how the calls in the jail were recorded nor how they were preserved. He has no personal knowledge of how the original or the copy of the disc was made nor how the prosecutor came into possession of the disc.

¶29 Based solely on Chernin's affidavit, the disc could not have been admitted into evidence. Affidavits "made by persons who do not have personal knowledge" are insufficient to support summary judgment "and will be disregarded." *Leszczynski*, 30 Wis. 2d at 538. Further, an affidavit proffering records of regularly conducted activity must show that the witness is "qualified" to testify. *See* WIS. STAT. § 908.03(6); *Palisades Collection LLC*, 324 Wis. 2d 18, ¶15. To be qualified, "the witness must have personal knowledge of how the records were made[.]" *Palisades Collection LLC*, 324 Wis. 2d 180, ¶22.

¶30 In reviewing Chernin's affidavit, we conclude that he is not qualified to testify about the disc because he does not have the requisite personal knowledge of how the jail phone calls were recorded and preserved, nor how the original disc and the copy were made, nor how the prosecutor came into possession of the disc. Therefore, his affidavit was insufficient to support summary judgment and must be disregarded. *See Leszczynski*, 30 Wis. 2d at 538. Based on the foregoing, we conclude that the trial court erred in holding that Chernin's submissions were

sufficient to constitute a prima facie case for summary judgment. We conclude that Chernin has not established a prima facie case for summary judgment.

## CONCLUSION

¶31 For the foregoing reasons, we reverse the trial court's order granting Chernin's motion for summary judgment and remand for further proceedings.[11]

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[11] Hodges filed a brief and supporting documents in opposition to Chernin's motion for summary judgment. If the moving party's submissions constitute a prima facie case for summary judgment, then we examine the opposing party's submissions to determine whether there are material facts in dispute that entitle the opposing party to a trial." *See Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503 (internal citation omitted). Here, because we conclude that Chernin's submissions do not constitute a prima facie case for summary judgment, we need not examine Hodges' submissions.

Hodges also argues that the trial court erred in failing to grant his motion to lift the stay regarding his interrogatories that he served on Chernin. This court need not address that issue because we are remanding the matter to the trial court for further proceedings and that issue will be addressed by the trial court.