Marilyn DeThorne, Plaintiff-Appellant,

Estate of A. Robert DeThorne, Subrogated-Plaintiff-Appellant,

v.

James F. Bakken, Bakken, Feifarek & Taylor, and CNA Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 94–0892. Submitted on briefs February 3, 1995.—Decided August 31, 1995.*

(Also reported in 539 N.W.2d 695.)

713

714

For the plaintiff-appellant the cause was submitted on the briefs of *John Carlson, P. Scott Hassett,* and *Diana L. Stone* of *Lawton & Cates, S.C.* of Madison.

For the subrogated-plaintiff-appellant the cause was submitted on the briefs of *Richard L. Schmidt* of *Boardman, Suhr, Curry & Field* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Richard G. Niess* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.* of Madison.

Before Gartzke, P.J., Dykman and Vergeront, JJ.

DYKMAN, J.   Marilyn DeThorne and the estate of her deceased husband, A. Robert DeThorne, appeal from a judgment in which the trial court dismissed Marilyn's legal malpractice action against James F. Bakken, the attorney who supervised the execution of Robert's 1989 will. In *Estate of DeThorne,* 163 Wis. 2d 387, 471 N.W.2d 780 (Ct. App. 1991) (*DeThorne I*), we determined that the will had been improperly executed and was therefore invalid. In this legal malpractice action, Marilyn argues that the trial court erred when it concluded that Attorney Bakken had not negligently supervised the execution of Robert's will. According to Marilyn, Attorney Bakken should have known that Robert had to make an express request for assistance if another person helped him sign his will. We conclude that a reasonably prudent attorney would not have

715

necessarily concluded in 1989 that a testator needing assistance when executing his or her will had to make an express request for such assistance. Accordingly, we affirm.

## BACKGROUND

The facts surrounding the execution of Robert's will are not in dispute. In 1989, Attorney Bakken drafted a will for Robert after Robert became ill. Attorney Bakken brought the will to Robert's home for his signature. However, when Robert began to execute his will, he was unable to hold a pen and dropped it at least five times. A family friend who was acting as a witness went to Robert's side and supported his wrist or hand in such a way that permitted Robert to sign the will. Robert never requested such assistance but did not appear to object when it was given. In *DeThorne I*, an action brought by Robert's daughters from a previous marriage contesting that will, we concluded that Robert's will did not comport with the formalities set forth in § 853.03, STATS.,[1] because Robert did not expressly authorize assistance when the witness held Robert's wrist or hand as he signed the will. *DeThorne I*, 163 Wis. 2d at 392-93, 471 N.W.2d at 782-83. Thus, we concluded that the will was invalid.

Subsequently, Marilyn commenced this action against Attorney Bakken alleging that he committed

---

[1] Section 853.03, STATS., provides in part:

Every will in order to be validly executed must be in writing and executed with the following formalities:

(1) It must be signed by the testator, or in the testator's name by one of the witnesses or some other person at the testator's express direction and in the testator's presence, such a proxy signing either to take place or to be acknowledged by the testator in the presence of the witness.

legal malpractice by failing to properly supervise the execution of the will. After a two-day trial, the court determined that Attorney Bakken was not liable because a reasonably prudent attorney would not have anticipated that the law would require an express request for assistance based upon the facts presented in this case. This appeal followed.

## LEGAL MALPRACTICE

In a legal malpractice action, the plaintiff must show: (1) the existence of an attorney-client relationship;[2] (2) the acts constituting the attorney's negligence; (3) causation; and (4) damages. *Lewandowski v. Continental Casualty Co.*, 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979) (citation omitted). Whether an attorney is negligent requires a showing that the attorney violated a duty of care. *Cook v. Continental Casualty Co.*, 180 Wis. 2d 237, 245, 509 N.W.2d 100, 103 (Ct. App. 1993). In a legal malpractice action:

> It is a lawyer's duty, in rendering legal services to a client, to exercise that degree of care, skill, and judgment which is usually exercised under like or similar circumstances by lawyers licensed to practice in this state.

---

[2] In *Auric v. Continental Casualty Co.*, 111 Wis. 2d 507, 509, 331 N.W.2d 325, 327 (1983), the court concluded that a beneficiary of a will may maintain a legal malpractice action against an attorney who negligently drafts or supervises the execution of a will even though the beneficiary is not in privity with that attorney.

717

*Id.* at 245-46, 509 N.W.2d at 103 (quoting WIS J I—CIVIL 1023.5).[3] A lawyer is not held to a standard of perfection "but must 'exercise his best judgment in light of his education and experience.' " *Id.* at 246, 509 N.W.2d at 103 (quoting *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 111, 362 N.W.2d 118, 128 (1985)). Judgment involves a reasoned process based upon the accumulation of all available pertinent facts. *Id.* An attorney will not be held liable for those errors in judgment that are made in good faith, are well-founded, and are in the best interests of the client. *Id.*

Whether an attorney has breached the applicable standard of care is a question of fact to be determined through expert testimony. *Id.* Expert testimony, however, is not necessary in two types of cases: (1) where the breach is so obvious, apparent and undisputed that it may be determined by a court as a matter of law; or (2) where the matters to be proven do not involve specialized knowledge, skill, or experience. *Olfe v. Gordon*, 93 Wis. 2d 173, 181-82, 286 N.W.2d 573, 577 (1980). In the instant case, whether Attorney Bakken breached his duty of care is the focus of this dispute. Additionally, this case does not involve knowledge within a person's ordinary experience. Thus, we must consider the expert testimony presented at trial to determine if Attorney Bakken breached his duty of care.

---

[3] *But see Duffey Law Office, S.C. v. Tank Transp., Inc.*, 194 Wis. 2d 675, 677, 535 N.W.2d 91, 92 (Ct. App. 1995) (attorney claiming expertise in a particular area of the law is held to a standard of professional care that is consistent with that expertise). There is no evidence that Attorney Bakken claimed to be an expert in probate law and the trial court found that probate work constituted only about twenty percent of his practice.

At trial, experts for Marilyn testified that Attorney Bakken had breached the standard of care by not asking Robert if he wanted assistance before the witness was permitted to help him. Experts for Attorney Bakken testified that a reasonably prudent attorney could have believed that someone could assist Robert in the manner in which the witness did without his making an express request for such assistance. Experts for both sides based their opinions upon their interpretation of the law at the time the will was executed and specifically, *Estate of Komarr*, 46 Wis. 2d 230, 175 N.W.2d 473 (1970), *cert. denied sub nom.* 401 U.S. 909 (1971).

The case law involving assisted will executions is scant. In *Will of Wilcox*, 215 Wis. 341, 342-43, 254 N.W. 529, 529 (1934), *overruled by Estate of Komarr*, 46 Wis. 2d 230, 175 N.W.2d 473 (1970), a testator who had suffered a stroke and was physically unable to write her signature or, unaided, could not make her mark, was assisted by another person when she executed her will. There was no evidence that the testator had asked the other person to make her mark for her. *Id.* at 342, 254 N.W. at 529. The statute governing the signing of wills at that time, § 238.06, STATS., 1931,[4] provided

---

[4] Section 238.06, STATS., 1931, provided:

No will made within this state since the first day of January, 1896, except such nuncupative wills as are mentioned in this chapter, shall be effectual to pass any estate, whether real or personal, or to charge or in any way affect the same unless it be in writing and signed by the testator or by some person in his presence and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses in the presence of each other; if the witnesses are competent at the time of such attesting their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will if it be otherwise satisfactorily proved.

that a will must be signed by the testator or by another person in the testator's presence pursuant to an express request by the testator.

When the will was challenged, the court concluded that because the testator did not expressly direct the other person to make the mark for her, the case turned on whether the testator's act of touching of the pen was sufficient to warrant a conclusion that the mark was that of the testator and not that of the person providing the assistance. *Id.* at 343, 254 N.W. at 529. In concluding that it was, the court noted that it was common practice in that day for another person to provide assistance by making the mark while the testator was touching the pen and that "such a participation in the making of the mark, makes the act that of the testatrix. It furnished objective evidence of assent, and doubtless[ly] represented as much participation in the act as [the] testatrix was physically capable of." *Id.*, 254 N.W. at 530.

Some thirty-four years later, the court revisited the issue in *Estate of Komarr.* In that case, the testator's left arm was paralyzed and she was physically unable to write her signature or, unaided, to make her mark. *Komarr*, 46 Wis. 2d at 236, 175 N.W.2d at 476. The evidence showed that either the testator held the pen and someone else held the testator's hand, or vice versa. *Id.* at 237, 175 N.W.2d at 476-77. There was no evidence that the testator made an express request for assistance in signing the will. *Id.* at 236, 175 N.W.2d at 476.

While the court concluded that the evidence was sufficient to comply with the rule set forth in *Wilcox*, the court rejected and overruled *Wilcox* as allowing for too much fraud. *Id.* at 238, 175 N.W.2d at 477. Instead, the court explained: "We think that where one fails or

is unable to in any manner expressly authorize another to sign for him, the statute's alternative requisite is not met by simply taking the testator's hand, as an inanimate object, and making his mark or signature." *Id.* The court then announced the new rule:

> Where one does not expressly authorize another to assist him, such assistant should not be allowed to claim that the use of the testator's hand was voluntary. . . . Under the statute as we now view it, mere use of the testator's hand when executing the will does not furnish "objective evidence of assent." *Direction to assist the testator, like the direction to sign for him, must be actively rather than passively expressed.*

*Id.* (emphasis added). Thus, the court concluded that the will did not satisfy the statutory provisions and would not be admitted to probate. *Id.* The court also concluded that the evidence suggested that the testator's will was the product of undue influence. *Id.* at 242, 175 N.W.2d at 479.

And so, relying upon *Komarr*, we decided in *DeThorne I* that Robert's will was invalid because he failed to request assistance before the witness aided him in making his mark. *DeThorne I*, 163 Wis. 2d at 393, 471 N.W.2d at 783. In doing so, we reasoned:

> The trial court found that the signature was a product of the influence of both Robert and [the witness]. The trial court could not ascertain the degree to which each contributed to the signature. The rule in *Komarr* was adopted because of the "obvious opportunity" for fraud where a testator is physically helpless. Where the actual signature of the testatrix is physically influenced by a third party, the danger of fraud is present. It is not allevi-

ated by the fact that Robert may, in some degree, have also influenced the signature.

*Id.* (citation omitted).

The dissent in *DeThorne I* took the position that *Komarr* only applied where the testator's hand was "an inanimate object" and the testator was helpless. *Id.* at 394-95, 471 N.W.2d at 783. The dissent described the facts of this case to be "a far cry from the *Komarr* situation." *Id.* at 397, 471 N.W.2d at 785. Because there was no evidence disputing Robert's intent to execute the will, the dissent concluded that the degree of assistance provided to Robert did not offend *Komarr*. *Id.* at 395, 471 N.W.2d at 784.

At trial, Attorney Bakken admitted that he was aware of the *Komarr* decision when he supervised the execution of Robert's will but that he did not believe that it was applicable to the instant case because Robert's hand was not "an inanimate object." Pointing to both the majority and dissenting opinions in *DeThorne I*, the trial court determined that our decision in *DeThorne I* "represented a significant departure from the pre-existing law on assisted will signing in Wisconsin." Thus, the trial court concluded that Marilyn:

> failed to establish to a reasonable certainty by a preponderance of evidence that [Attorney] Bakken failed to meet the requisite standard of care required of attorneys under similar circumstances at the time this will was executed. I am not persuaded that, at the time of will execution, an attorney exercising reasonable care and calling upon that degree of knowledge, care, skill, ability, and diligence usually possessed by lawyers in this state would have anticipated the change in legal requirements first enunciated in [*DeThorne I*].

The trial court reasoned that "the facts in *Komarr* were significantly different from those facing Attorney Bakken," that there was no evidence of mental incapacity or comparable undue influence, and that there were substantial indicia of Robert's assent to the will.

The trial court also found that Attorney Bakken's experts' opinions suggesting that *Komarr* could be reasonably read to not apply to the facts of this case were more persuasive than Marilyn's experts' opinions for the following reasons: (1) assisted will signings rarely occur and the limited case law on the subject makes it difficult for a practicing attorney to predict future developments in the common law; (2) Attorney Bakken's experts were engaged in general practices similar to that of Attorney Bakken whereas one of Marilyn's experts was a law professor with a limited practice; and (3) the facts of this case were sufficiently different such that "a prediction regarding an extension of [the] rule of *Komarr* would not have been contemplated by a reasonably prudent lawyer practicing in this area in 1989."

We, too, are impressed with the fact that Attorney Bakken's experts were knowledgeable general practice attorneys who asserted that they would not have thought *Komarr* applied to this case. We believe that their opinions more accurately represent the degree of care, skill and judgment exercised by lawyers practicing in Wisconsin than those offered by Marilyn's experts. And, we accept that the facts in *Komarr* were sufficiently different from the instant case because Robert's physical limitations were less severe than the testator's in *Komarr*. A reasonably prudent attorney supervising the execution of Robert's will would not have necessarily concluded that he or she should have

obtained from Robert an express request before the witness assisted him. While that view, as we explained in *DeThorne I*, is wrong, it was nonetheless a reasonable good faith position based upon *Komarr*. Consequently, we reject Marilyn's assertion that the result in *DeThorne I* was foreseeable and conclude that Attorney Bakken did not breach the professional duty of care he owed to Robert and Marilyn to exercise reasonable skill and care.

The irony of our result in this case does not escape us. In *Dethorne I*, we determined that because this will was not properly executed, it could not be admitted to probate. Here, we conclude that Attorney Bakken, who improperly supervised the execution of the will, cannot be held responsible for his failure to ensure that all formalities were complied with to guarantee the will's validity. Nonetheless, we will not hold attorneys responsible when their decisions are ones that a reasonably prudent attorney might make even though they are later determined by a court of law to be erroneous. Attorneys not holding themselves out as experts in a particular field are subject to an ordinary standard of care. We will not make attorneys liable for all errors under a theory of legal malpractice, but for only those errors which fall outside of the realm of reasonable due care.

*By the Court.*—Judgment affirmed.