**FREEMAN UNITED COAL MINING COMPANY, Petitioner,**

v.

**Billy R. HILLIARD; Benefits Review Board; Director, Office of Workers' Compensation Programs, et al., Respondents.**

No. 94–3875.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 1, 1995.

Decided Sept. 15, 1995.

---

Kathryn S. Matkov, Karin T. O'Connell (argued), Gould & Ratner, Chicago, IL, for Freeman United Coal Mining Company.

Sandra M. Fogel (argued), S.I.U. Legal Clinic, Carbondale, IL, for Billy R. Hilliard.

Thomas O. Shepherd, Jr., Benefits Review Board, Executive Counsel, Clerk of the Board, Donald S. Shire, Sol. Gen., Department of Labor, Washington, DC, for Benefits Review Board.

Ida Castro, Sarah M. Hurley, Christian B. Barber, Department of Labor, Appellate Litigation, Washington, DC, for Office of Workers' Compensation Programs.

John H. Secaras, Sol. Gen., Department of Labor, Chicago, IL, Thomas S. Williamson, Jr., Department of Labor, Office of Solicitor, Washington, DC, for Department of Labor.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

POSNER, Chief Judge.

The coal company asks us to set aside an award of "black lung" benefits to a former employee, Hilliard. 30 U.S.C. §§ 901 et seq. He had first applied for benefits in 1986, the year he quit working, and had been turned down the following year. He reapplied in 1990 and this time was successful. The medical record submitted with his first application consisted of three x-rays, of which one was unreadable and two were interpreted by "B-readers" (experts in interpreting x-rays for evidence of black lung disease), as negative, an arterial blood gas study that did not indicate the presence of the disease, two pulmonary function studies which did not show disability, and three reports by physicians which concluded that Hilliard's breathing problems were due to emphysema caused by his having smoked three or four packs of cigarettes a day for thirty-five years, although one of the physicians thought Hilliard might have black lung disease too. The claims examiner who rejected Hilliard's claim (Hilliard did not appeal the rejection) concluded that Hilliard neither had pneumoconiosis nor was totally disabled.

The medical record submitted with the second application included six x-rays, one of which was read as positive by a B-reader (the others were all read as negative by B-readers); five pulmonary function studies, with mixed results as to disability; and reports by three physicians, two of whom diagnosed pneumoconiosis. The administrative law judge concluded that Hilliard was totally disabled by pneumoconiosis. He acknowledged that the evidence of pneumoconiosis was weak, but applied the Department of Labor's "true doubt" rule, under which if the evidence is in equipoise the applicant wins.

After the administrative law judge's decision, the Supreme Court invalidated the "true doubt" rule, *Director v. Greenwich Collieries*, — U.S. ——, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), with retroactive effect. *Consolidation Coal Co. v. Office of Workers' Compensation Programs*, 54 F.3d 434, 437 (7th Cir.1995). The Benefits Review Board caught the mistake but deemed it harmless. The coal company had complained only about the administrative law judge's application of the true doubt rule to the x-ray evidence; but the administrative law judge had found pneumoconiosis *independently* on the basis of the physicians' reports. It is apparent from his opinion that in so finding he had applied the true doubt rule to the reports, just as he had done to the x-rays; but the coal company missed this, and having failed to complain to the Benefits Review Board would ordinarily be barred, by the doctrine of exhaustion of administrative remedies, from complaining to us. *Freeman United Coal Mining Co. v. Office of Workers' Compensation Program*, 957 F.2d 302 (7th Cir. 1992); *Freeman United Coal Co. v. Office of Workers' Compensation Programs*, 988 F.2d 706, 709 n. 3 (7th Cir.1993) (per curiam). However, our very recent decision in *Old*

*Ben Coal Co. v. Director,* 62 F.3d 1003, 1007 (7th Cir.1995), forgave waiver in a case similar to ours, emphasizing that all the company wanted was a chance for the Board to consider the bearing of a new decision by the Supreme Court; it was not trying to bypass the Board. See also *Freeman United Coal Co. v. Office of Workers' Compensation Programs, supra,* 957 F.2d at 303. In our case the Supreme Court's decision came down before the company presented its case to the Board, while in *Old Ben* the decision came after and the argument for waiver was merely that the company should have urged the position that the Court later adopted—an argument that we already had held, in *Consolidation Coal Co. v. Office of Workers' Compensation Programs,* 54 F.3d 434, 437 (7th Cir.1995), did not establish waiver. So ours is a weaker case for forgiving waiver. But if ever there was a case for a "plain error" doctrine in civil cases, it would be one in which a decision by the Supreme Court had completely demolished the basis for an agency's ruling. At all events, since, as we are about to see, the present case must be remanded anyway, we cannot think of any reason why the Board, should the issue of "true doubt" about the medical reports not wash out, would refuse to consider the issue on remand.

■ The company's solider ground for knocking out the award of benefits, because a ground unencumbered by concerns over waiver, is that the administrative law judge failed to apply the correct test for a reapplication for benefits. As we explained in *Sahara Coal Co. v. Office of Workers' Compensation Programs,* 946 F.2d 554 (7th Cir. 1991), the only way in which an applicant whose claim has (as here) been denied with finality can obtain benefits by filing a second claim is by showing that a material change in his condition has occurred since the first claim. The fact that he has more evidence of disease or disability on the second round does not show that his condition has changed. He may simply have done a better job of gathering evidence the second time around. So far as can be gleaned from the administrative law judge's opinion, this is all that happened here. Hilliard had more evidence the second time. Nowhere in the opinion do we find any statement or suggestion that his condition had deteriorated since 1986.

So the award cannot stand. But we want to make clear that we do not accept the coal company's alternative contention that since Hilliard quit working as a coal miner in 1986 and was not then suffering from pneumoconiosis (so at least we must assume because of the rejection of his first claim, a rejection based on absence of the disease as well as absence of total disability), he could not have been suffering from the disease in 1990 because he could not have contracted the disease after ceasing to be a coal miner. This of course is a medical proposition and we were surprised therefore to find the company offering no medical authority for it. Hilliard's lawyer, also a specialist in black lung litigation, likewise denied the proposition without citation of medical authority.

A recurrent criticism of lawyers, judges, law professors, and other members of the legal profession is that they appear to suffer from the curious delusion that everything that is worth knowing is found in judicial opinions and other legal texts. Whether pneumoconiosis, like most cancers, has an incipient stage at which not only is the patient asymptomatic but his disease is undiagnosable, in which event it would be entirely possible for Hilliard to test negative in 1986 after quitting work as a coal miner yet be found to have the disease in 1990; or whether, as in the case of infection with HIV (the AIDS virus), diagnosis is possible (though the patient is asymptomatic) within six months of infection; or whether as in the case of a cold or the flu unmistakable symptoms appear within hours or days of becoming infected—these are questions of medicine, not of law. Our own research discloses that there is some medical opinion that coal workers' pneumoconiosis, especially the more serious kind—a sequel to simple, nondisabling pneumoconiosis—known as "progressive massive fibrosis," may not appear until years after the worker has ceased being exposed to dust. Barry S. Levy & David H. Wegman, *Occupational Health: Recognizing and Preventing Work–Related Disease* 450–51 (3d ed. 1995); H.A. Waldron, *Occupational Health Practice* 52 (3d ed. 1989); P. Fran-

cois et al., "Pneumoconiosis of Delayed Apparition: Large Scaled Screening in a Population of Retired Coal Miners of the Northern Coal Fields of France," in Seventh International Pneumoconiosis Conference, *Abstracts of Communications* 979 (1988). That a delayed appearance of pneumoconiosis in either its simple or its serious form is in fact possible is not clear from the literature we have consulted; nor has our search been exhaustive; nor are we experts on medical science. What is clear is that the coal company has failed to back up its argument with pertinent materials (and likewise the applicant with his counterargument), and the argument is therefore not available as a basis for attacking the order of the Benefits Review Board (or the counterargument available to defend it).

The order is, nevertheless, for the reason stated earlier, vacated, and the case remanded.