**Gary McKNIGHT, Plaintiff,**

v.

**Robert J. GINGRAS and Fox & Fox, S.C., f/k/a Fox, Fox, Schaefer & Gingras, Defendants.**

No. 94–C–834.

United States District Court, E.D. Wisconsin.

June 15, 1997.

David A. Axelrod, Schoenberg, Fisher & Newman, Chicago, IL, Kenneth A. Dean, Dean Law Office, Chicago, IL, for Plaintiff.

Richard G. Niess, Coyne, Niess, Schultz, Becker & Bauer, Madison, WI, for Defendants.

## DECISION AND ORDER

RANDA, District Judge.

This is a diversity suit seeking damages for alleged attorney malpractice. The case comes before the Court on the motion of Defendants Robert J. Gingras and Fox & Fox, S.C., f/k/a Fox, Fox, Schaefer & Gingras (collectively "Gingras"), for summary judgment and on the cross-motion of Plaintiff Gary McKnight ("McKnight") for partial summary judgment. For the reasons elaborated below, the defendants' motion for summary judgment is denied, the plaintiff's motion for partial summary judgment on causation is granted, and the Court, on its own motion, grants summary judgment in McKnight's favor on negligence.

### I.

This case comes in the wake of a federal civil rights action brought by McKnight in this district in March, 1987. *See McKnight v. General Motors Corp.,* 705 F.Supp. 464 (E.D.Wis.1989). There, McKnight sued his

former employer, the General Motors Corporation ("GM"), alleging that GM's termination of his employment was both racially motivated and done in retaliation for his having filed claims of racial discrimination against the company. McKnight, represented by Attorney Gingras, prevailed under both Title VII and 42 U.S.C. § 1981 and, in addition to other relief not relevant here, the jury awarded him $555,000 in compensatory and punitive damages under § 1981. Judge Gordon affirmed the award. *Id.* at 468. GM appealed, and Gingras represented McKnight on appeal. The instant case concerns Gingras' professional conduct before the court of appeals.

On June 15, 1989, while the appeal in *McKnight* was pending before the Seventh Circuit, the Supreme Court issued its decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which partly overruled the Court's decision in *Runyon v. McCary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), and redefined the scope of § 1981.[1] In briefing the *McKnight* appeal, the parties contested whether § 1981, as limited by *Patterson,* was properly applicable to McKnight's termination. The Seventh Circuit, per Judge Posner, agreed with GM that *Patterson* had taken the conduct complained of by McKnight out of the ambit of § 1981.[2] Accordingly, the court reversed the district court's award of damages under § 1981. *McKnight v. General Motors Corp.,* 908 F.2d 104, 117 (7th Cir.1990).

There was a twist to the tale, however, which gave rise to the instant case. GM had made no argument to the district court relative to the scope of § 1981. This despite the fact that the Supreme Court had issued an order in April, 1988—long before the *McKnight* trial—which was published in the United States Reports, instructing the parties in the *Patterson* case to brief the question whether the Court should reconsider the interpretation of § 1981 that it had adopted in *Runyon. See Patterson v. McLean Credit Union,* 485 U.S. 617, 108 S.Ct. 1419, 99 L.Ed.2d 879 (1988). Had GM waived arguments based on *Patterson* by failing to mention the Supreme Court's order to reargue *Runyon* and otherwise failing to question the scope of § 1981 in the district court? Judge Posner's opinion seems clearly to say so, yet only in dicta. *See McKnight,* 908 F.2d at 108.[3] For in the end, the court found it unnecessary to decide the waiver question, because Gingras never argued that GM had waived argument based on *Patterson.* Thus, said Judge Posner, "McKnight waived any defense of waiver that he might have had." *Id.* Having found waiver of waiver, the court went on to apply *Patterson* to McKnight's case on the merits. The court held that "McKnight's claims under § 1981 did not survive *Patterson,*" and reversed the district court's award on those claims.[4] *Id.* at 112.

This malpractice action by McKnight against Gingras and his former law firm followed in due course. McKnight claims that Gingras is liable to him in tort for the amount of the overturned damages award, $555,000, plus interest from October 14, 1988 (the date the trial court entered its judgment) for negligently failing to argue to the

---

1. For present purposes, it is sufficient to note that *Patterson* held that racial harassment occurring after the formation of an employment contract is not actionable under § 1981, unless such harassment may be said to impair the employee's ability to enforce established contractual rights. *Patterson,* 491 U.S. at 176–78, 109 S.Ct. at 2373.

2. The Seventh Circuit held that, under *Patterson,* GM's conduct toward McKnight did not run afoul of § 1981, both because it occurred after the formation of his "continuing contractual relation" (which is how Judge Posner termed McKnight's employment-at-will chez GM) and because GM had not interfered with McKnight's contractual entitlements. *McKnight,* 908 F.2d at 109, 111.

3. In Judge Posner's words, "[a] party should be allowed to take advantage of a decision rendered during the pendency of his case, even if he had not reserved the point decided, if the decision could not reasonably have been anticipated.... But [here,] General Motors had plenty of time in which to mount a timely challenge to the applicability of section 1981." *McKnight,* 908 F.2d at 108.

4. Judge Fairchild dissented in part on the merits of *Patterson's* applicability to McKnight's claims, but he took no exception to Judge Posner's dicta on the waiver issue. *See, McKnight,* 908 F.2d at 117–19 (Fairchild, J., concurring in part, dissenting in part).

Seventh Circuit that GM had waived arguments based on *Patterson*.[5] Additional facts relevant to the resolution of the case are presented as necessary in the discussion below.

## II.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id.* at 327, 106 S.Ct. at 2555 (internal quotation marks omitted). It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.*, 794 F.Supp. 328, 330 (E.D.Mo.1992). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While a *material* fact is one that is "outcome determinative under the governing law," *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir.1990), a *genuine* issue as to that material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ The question whether a material issue of fact is *genuine* necessarily requires "some quantitative determination of sufficiency of the evidence." Steven A. Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183, 186 (1987). "Of course, a court still cannot resolve factual disputes that could go to a jury at trial, ... [b]ut no longer need the trial court leave every sufficiency issue for trial or a later directed verdict motion." *Id.* "A district judge faced with [a summary judgment motion] must decide, subject of course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572–73 (7th Cir.1989) (citations omitted).

Motions for partial summary judgment, on the other hand, are not dispositive motions and generally do not obviate the need for a trial. *Cf.* Fed.R.Civ.P. 56(d). In granting partial summary judgment, the Court adjudicates some but not all of the issues in the case. Upon so doing, the Court must "specify[ ] the facts that appear without substantial controversy ... and direct[ ] such further proceedings in the action as are just." *Id.* If at any time, however, it becomes clear to the Court that further proceedings with respect to any issue(s) not disposed of by the Court's grant of partial summary judgment would be pointless due to the absence of a genuine issue of material fact as to such issue(s), the Court may enter judgment on such issue(s) and, if appropriate, bring the case to a close. *See, Chicago Observer v. City of Chicago*, 929 F.2d 325, 329 (7th Cir.1991) (citing Fed. R.Civ.P. 56); *accord Cvelbar v. CBI Illinois Incorporated*, 106 F.3d 1368, 1381 n. 16 (7th Cir.1997).

## III.

■ "In a legal malpractice action, the plaintiff must show: (1) the existence of an attorney-client relationship; (2) the acts constituting the attorney's negligence; (3) causation; and (4) damages." *DeThorne v. Bakken*, 196 Wis.2d 713, 717, 539 N.W.2d 695, 697

5. Whether prejudgment interest is appropriate in this case has not been briefed, and the Court expresses no opinion on the matter at this time.

(Ct.App.1995) (citing *Lewandowski v. Continental Casualty Co.*, 88 Wis.2d 271, 277, 276 N.W.2d 284, 287 (1979)). It is undisputed that Gingras and McKnight had an attorney-client relationship at the time Gingras represented McKnight on appeal and that Gingras owed McKnight a duty of care stemming from that relationship. *See* Decision and Order (March 22, 1996), p. 2. Nor is there any dispute that McKnight sustained damages when the Seventh Circuit set aside the district court's award under § 1981. The issues of negligence and causation are hotly contested, however. The Court treats these below, accepting as true Gingras' version of the relevant facts.

## A. Negligence

■ The negligence of an attorney is established by a showing that he breached his duty to his client. *See DeThorne*, 196 Wis.2d at 717, 539 N.W.2d at 697 (citation omitted). As the Wisconsin Court of Appeals has stated,

> It is a lawyer's duty in rendering legal services to a client to exercise that degree of care, skill and judgment which is usually exercised under like or similar circumstances by lawyers licensed to practice in this state. A lawyer is not held to a standard of perfection, but must exercise his best judgment in light of his education and experience. Judgment involves a reasoned process based on the accumulation of all available pertinent facts. An attorney will not be held liable for errors in judgment that are made in good faith, are well founded and are in the best interests of his client.

*Id.*, 196 Wis.2d at 717–718, 539 N.W.2d at 697 (citations and internal quotation marks omitted). Whether an attorney has breached this standard of care is a mixed question of law and fact to be determined through expert testimony. *Id.* "Expert testimony is not required [however,] in cases where the breach is so obvious that it may be determined by a court as a matter of law." *Helmbrecht v. St. Paul Insurance Company*, 122 Wis.2d 94, 112, 362 N.W.2d 118, 128 (1985) (citing *Olfe v. Gordon*, 93 Wis.2d 173, 286 N.W.2d 573 (1980)).

■ There appears to be no genuine dispute as to Gingras' conduct in representing McKnight on appeal before the Seventh Circuit. The parties simply differ as to whether that conduct was negligent. On that score, the defendants argue that Gingras did not breach his duty to McKnight as a matter of law, basing this contention on Gingras' deposition testimony and his uncontradicted second affidavit. The plaintiff, on the other hand, sees a triable issue as to whether Gingras' conduct constituted a breach of his professional duty and would rely upon expert testimony in making his case.

In his second affidavit, Gingras avers that he made a conscious decision not to argue that GM had waived the right to rely on *Patterson* in its appeal. Gingras states that while neither he nor his associate recall doing any research on the issue of waiver, he was "generally aware" of various federal precedents relating to whether and when appellate courts should apply changes in the law to cases already pending. Gingras explains that, based on his general awareness of these cases and the legal principles elucidated therein, he concluded that he could not credibly argue that GM had waived its right to rely on *Patterson*, and thus he decided not to do so. *See* Second Affidavit of Robert J. Gingras ("Gingras 2d aff."), ¶¶ 2–6. McKnight does not dispute Gingras' account of his conduct. *See*, Plaintiff's Proposed Findings of Fact in Support of Cross-Motion For Partial Summary Judgment, ¶¶ 23–24.

In moving for summary judgment, the defendants argue that Gingras' general understanding of relevant legal principles was sufficiently broad in scope and correct in substance that further research was not needed to satisfy his duty to McKnight. In evaluating this argument, the Court first inquires whether the general legal awareness upon which Gingras relied in rejecting a waiver argument was so accurate that further research (including a re-reading of the case law of which he was "generally aware") would, as he says, have been "fruitless." The Court answers this inquiry in the negative. The Court also addresses certain other considerations which Gingras apparently neglected to take into account, again finding

that a reasonable and prudent attorney would have found research fruitful. The Court concludes that after conducting reasonable research, an attorney of ordinary skill and diligence would necessarily have argued that GM waived its right to rely on *Patterson.* Accordingly, the Court holds that Gingras was negligent in deciding not to do so, as a matter of law. *See De-Thorne,* 196 Wis.2d at 715–16, 539 N.W.2d at 696.

In his second affidavit, Gingras avers, *inter alia:* (1) that he was "generally aware of Supreme Court decisions which had held that an appellate court is required to apply the law in effect at the time of its decision, even if it is an intervening case" rendered during the pendency of the appeal; (2) that he was "generally aware that the waiver rule had been held by the Seventh Circuit to be inapplicable to situations where the appellate courts are asked to rule upon the legal basis underpinning the trial court's judgment or where the trial court's judgment is 'plain error;'" and (3) that he "was also aware that other circuits had issued decisions similar to those rendered by the 7th Circuit." Gingras 2d aff., ¶¶ 3–5. Based on this general knowledge, Gingras believed that GM had not waived its argument based on *Patterson,* and concluded that he "could not credibly argue waiver on the part of [GM]." *Id.* at ¶ 6. As discussed below, the Court finds Gingras' conclusion manifestly unreasonable. A close reading of the case law of which Gingras claims general awareness would have led a reasonable and prudent attorney to conclude that waiver would be a plausible, non-frivolous assertion in the circumstances of the *McKnight* appeal.

The Court begins with the Supreme Court authorities cited by Gingras in support of his conclusion that he could not credibly argue waiver. These are: *James B. Beam Distilling Company v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), *Thorpe v. Housing Authority of City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), and *Vandenbark v. Owens–Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct.

347, 85 L.Ed. 327 (1941). Taking these in chronological order, *Vandenbark and Thorpe* both refer only to a "general" rule that an appellate court must apply an intervening judicial change in the law. What is more, both cite and primarily rely on Justice Marshall's opinion in *United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801), a case which would have aided a waiver argument in *McKnight.* There, after stating the foregoing general rule, Marshall's opinion expressly allows that "in mere private cases between individuals, a[n appellate] court will and ought to struggle hard against a construction which will by retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to [the law existing at the time of it decision]." *Schooner Peggy,* 1 Cranch at 110, 2 L.Ed. 49 (quoted in *Thorpe,* 393 U.S. at 282, 89 S.Ct. at 526, and cited in *Vandenbark,* 311 U.S. at 541–42, 61 S.Ct. at 349).

Similarly, the Supreme Court's opinion in *Bradley,* while at first blush adverse to McKnight's potential waiver argument, expressly allows that "neither our decision in *Thorpe* nor our decision today purports to hold that courts must *always* ... apply new laws to pending cases...." *Id.,* 416 U.S. at 715, 94 S.Ct. at 2018 (emphasis added). Lastly, the Supreme Court's more recent decision in *James B. Beam Distilling Company* lends no support to Gingras' position. The rule of the case is "confined to an issue of choice of law: when the Court has applied a rule of law to the litigants in one case, it must do so with respect to all others *not barred by procedural requirements* or res judicata." *James B. Beam Distilling Company,* 501 U.S. at 544, 111 S.Ct. at 2448 (emphasis added). All that need be said to counter Gingras' citation to *James B. Beam Distilling Company* is that the rule that parties must make their arguments in the court of first instance, where reasonably possible—or waive them—*is* a procedural requirement, notwithstanding appellate courts' discretion to relieve a party from its operation.

It is thus clear that a careful reading of the foregoing cases would have revealed to a reasonable and prudent attorney that they

posed no real obstacle to a credible argument of waiver in *McKnight*. None of the foregoing opinions specifically mentions waiver, and in light of what they do say, the Court finds unpersuasive Gingras' assertion that these authorities reasonably led him to believe that he "could not credibly argue waiver." To the contrary, citation to *Schooner Peggy* (and cases citing it) could well have reinforced the credibility of a waiver argument in *McKnight*.

Nor do the Seventh Circuit opinions of which Gingras claims a general awareness foreclose a credible waiver argument in the circumstances faced by McKnight on appeal in that court. *See* Defendants' Brief in Support at 7–12 (citing cases). Analysis of a representative sampling of these cases illustrates the point. Consider *In re Disclosure of Grand Jury Material*, 821 F.2d 1290, 1292–93 (7th Cir.1987). Dicta in that opinion does no more than recite the general rule that new legal rules are applied retroactively to cases pending on appeal. The opinion does not assert—much less hold—that a court should or must do so irrespective of a factually valid [6] claim of waiver.

*United States v. City of Chicago*, 869 F.2d 1033 (7th Cir.1989) is likewise unhelpful to Gingras. There, in declining to credit an asserted waiver argument, the opinion states that "this is not a case where the district court failed to consider an issue because the appellant failed to raise it below. To the contrary, [the district judge's] decision is *premised* on [the theory not raised below.] It is folly . . . to assert that an appeals court . . . cannot consider the merits of each and every theory the district judge relied upon in deciding the case." *Id.*, 869 F.2d at 1035–36 (emphasis added). *City of Chicago* could readily have been distinguished from *McKnight* on the grounds that GM sought to

raise an issue which it failed to raise below and which the district court did *not* consider, namely whether McKnight's claims survived *Patterson*. In other words, the *Runyon* view of the scope of § 1981 was, for purposes of waiver, "the theory the district judge relied upon." On appeal, the court was not asked to "consider the merits of" Judge Gordon's application of *Runyon* to the case, but rather to apply a new intervening "theory," namely *Patterson*. Since the possibility that there would be such an intervening "theory" was known to GM at the time of trial and not asserted there (by way of a motion to stay proceedings or otherwise), there could be no "folly" in asserting that the appellate court should decline to consider it. Indeed, because *McKnight* was "a case where the district judge failed to consider a theory because the appellant did not raise it below," *City of Chicago* would have supported a waiver argument in *McKnight*.

Similarly, *Johnson v. Artim Transportation System*, 826 F.2d 538 (7th Cir.1987), would have provided no obstacle to a credible waiver argument in *McKnight*. There, after noting (and following in its holding) the rule that arguments not made in court of first instance are waived, the court stated that said rule does not apply to jurisdictional arguments or cases where the district court's decision is "plain error." *Id.*, 826 at 547–48 (citing *Heiar v. Crawford County*, 746 F.2d 1190, 1197 (7th Cir.1984)). The discussions in both *Johnson and Heiar* give no indication that the "plain error" exception to waiver applies to decisions that were *correct* at the time they were issued and rendered incorrect [7] only by intervening changes in the law.[8] In actuality, these two cases do nothing more than restate the principle that an appellate court *may* consider the merits of any legal theory relied on by the district court. And this, as noted above, is no imped-

---

6. *I.e.*, where the opposing party is actually raising a previously available contention for the first time on appeal.

7. "Anachronistic" might be a better adjective here.

8. In this regard, Gingras cites Judge Posner's dictum (circa 1995) that "if there ever was a case for a 'plain error' doctrine in civil cases, it would be where the Supreme Court had completely

demolished the basis for an agency's ruling." *See Freeman United Coal Mining Company v. Hilliard*, 65 F.3d 667, 669 (7th Cir.1995). This is unhelpful to Gingras, for the quoted excerpt merely embodies Judge Posner's view of what the law ought to be. There is no suggestion in *Hilliard*—much less *Johnson* or *Heiar*—that Judge Posner's stated view is or "ever was" the law.

iment to a waiver argument on behalf of a party in McKnight's position on appeal.

The Court next considers *Carroll v. General Accident Insurance Company of America,* 891 F.2d 1174 (5th Cir.1990), the case that provides what is perhaps the only support for Gingras' position. There, in circumstances similar to the *McKnight* appeal, the court noted that "[t]he general rule is that a federal appellate court will apply the law in effect at the time of its decision." Next, the opinion states in a footnote that "Carroll's suggestion that General Accident waived its right to bring its argument on appeal by failing to challenge the applicability of § 1981 in the court below is without merit. The rules of waiver available in other contexts do not prohibit an appellate court from considering the effect of an intervening decision that interprets a substantive statute to preclude a cause of action." *Carroll,* 891 F.2d at 1175 n. 1. Does this language establish the reasonableness of Gingras' decision not to argue waiver? The Court thinks not. For contrary to what the *Carroll* footnote suggests, the rules of waiver never *prohibit* an appellate court from considering a newly raised argument. The "general rule" as to intervening decisions, cited in *Carroll* and elsewhere, is a permissive one: it lies within the discretion of an appellate court to depart from the rule. Given that this is so, the *Carroll* opinion's finding that the waiver argument presented there was "without merit" is essentially conclusory.[9] In the Court's view, a reasonably prudent and diligent attorney, mindful of the appellate court's discretion in regard to waiver, would have brought *Carroll* to the Seventh Circuit's attention, challenged its (lack of explicit) reasoning and distinguished it from the *McKnight* appeal.[10]

Lastly, the Court finds no merit in Gingras' citation to *Brooms v. Regal Tube Company,* 881 F.2d 412 (7th Cir.1989), and *Courtney v. Canyon Television & Appliance Rental, Inc.,* 899 F.2d 845 (9th Cir.1990). In those cases, as in *Carroll* and *McKnight,* the trial and appeal phases straddled the *Patterson* decision. The court in *Courtney,* citing its "general practice" of applying intervening decisions to cases pending on appeal, stated that it saw "no reason to depart from this practice in the instant case" and applied *Patterson* retroactively. *Id.,* 899 F.2d at 849. The *Brooms* court did likewise. *Brooms,* 881 F.2d at 424. There is, however, no mention in either opinion of any claim of waiver and no indication that a factually valid claim of waiver would have been rejected by either court. Thus, these opinions simply do not support Gingras' conclusion as to the credibility of a waiver argument in *McKnight.* They are, rather, entirely neutral as to that question.

In sum, the court finds that a thoroughgoing understanding of the cases cited by Gingras—of which he claims only a general awareness at the relevant time—would have led a reasonable and prudent attorney to conclude that no case posed an insurmountable obstacle to a credible waiver argument on McKnight's behalf. In the Court's view, a lawyer of average diligence would most certainly have engaged in a close reading of any seemingly adverse precedents in order to ascertain whether the language of the opinions left any room to maneuver among, distinguish, and/or malign the reasoning of such precedents. This is, after all, what lawyers do. In varying degrees, as illustrated above, all the cases of which Gingras claims a general awareness left ample elbow room to argue

9. Indeed, the main text of the opinion expressly allows that an appellate court may decide "to depart from th[e] rule" (and decline to apply an intervening change in the law)—or not—as it sees fit. *Carroll,* 891 F.2d at 1176. Thus, to the extent footnote 1 suggests that a court is precluded from finding waiver where an intervening decision has modified the relevant substantive legal rule, the *Carroll* opinion is self-contradicting. *Cf. McKnight,* 908 F.2d at 107–08.

10. On the latter point, Gingras could readily have argued that the *Carroll* opinion makes no

finding as to the timing of proceedings below vis-a-vis the Supreme Court's order to the *Patterson* parties to reargue *Runyon. I.e.,* it cannot be gleaned from the *Carroll* opinion whether or not the Fifth Circuit believed that argument based on *Patterson* could reasonably have been preserved in the district court. *Cf.* note 3, *supra,* and note 13, *infra.* Gingras also could have distinguished *Carroll* from *McKnight* on the grounds that the former was an appeal from summary judgment, unlike the latter. *See* note 12, *infra.*

waiver in *McKnight.* In the Court's opinion, a reasonably prudent and diligent attorney would have known or discovered this and argued accordingly. If, in other words, Gingras "believed [waiver] to be a futile [argument] ... he should have known it to be otherwise, [a state of affairs which warrants] ... a judgment of malpractice." *Sprague v. Morgan,* 185 Cal.App.2d 519, 8 Cal.Rptr. 347, 350 (1960) (quoted in defendants' Brief in Support at 25).

Two further considerations dovetail with the foregoing discussion and reinforce the Court's conclusion that Gingras breached his duty to McKnight. First, Gingras had everything to gain by arguing waiver. That is, a waiver argument, if accepted by court of appeals, would most assuredly have carried the day and resulted in the affirmance of McKnight's damage award under the *Runyon* view of § 1981. Secondly, even if it be assumed that Gingras contemplated the upside of a waiver argument (yet discounted it entirely because he thought the argument incredible), there is no indication that Gingras paused to consider that *he had nothing whatsoever to lose* by arguing waiver.

 Apropos of the downside of a waiver argument, and contrary to what Gingras suggests in his Brief in Support, there was no appreciable risk that the argument would be held frivolous in the *McKnight* appeal. *See, McGinnis v. Ingram Equipment Company, Inc.,* 918 F.2d 1491, 1493 (11th Cir. 1990) (en banc).[11] Gingras cites no case where an attorney has been sanctioned for making an unpersuasive (or even a frivolous) waiver argument, and the Court's research reveals none. This is unsurprising, for waiver is in all cases a discretionary doctrine. A waiver argument will virtually always be a plausible, non-frivolous argument in a case where an opposing party first raises an argument on appeal which could have been raised below. This is particularly so in an appeal from a trial verdict. *Cf. Roofing and Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 990 (11th Cir. 1982).[12] Hence, even if (contrary to the Court's conclusion), the weight of precedent was adverse to McKnight's waiver argument, Gingras could have avoided any risk of sanctions by acknowledging and responding to such adverse precedent in his argument. *McGinnis,* 918 F.2d at 1493; *see also,* Fed. R.Civ.P. 11(b). In any case, the Court's view is that whether or not an unpersuasive waiver argument has ever been found frivolous was—in light of a waiver argument's case-winning potential—a "relevant legal principle" as to which Gingras had a duty to conduct reasonable research under *Helmbrecht.* Yet nowhere in his proposed findings of fact or his second affidavit does Gingras suggest that he researched, comprehended and impounded the absence of a downside into his decision not to argue waiver.

---

11. On this point, Gingras Cites Judge Hill's lone dissent in *McGinnis,* which states that the majority (which found waiver of waiver by a party in McKnight's position) "now forces attorneys into a Hobbesian (sic) dilemma: either (1) refrain from making a[ waiver] argument because case law contains no basis and significant adverse precedent exists; or (2) make the argument, despite the lack of basis and significant adverse precedent, and risk Rule 11 sanctions[.]" *McGinnis,* 918 F.2d at 1500 (dissenting opinion) (cited in defendants' Brief in Support at 18). This is unavailing, for as the majority opinion indicates, any non-frivolous argument that adverse precedent is distinguishable will provide a "basis" sufficient to forestall any risk of Rule 11 sanctions. *See,* Fed.R.Civ.P. 11(b)(2). In *McGinnis,* as in the case at bar, the dilemma Judge Hill warns of was not really a "Hobson's choice," since a plausible argument could have been made to distinguish *Carroll* and other precedents superficially adverse to a waiver argument.

12. In his opinion in *La Quinta Motor Inns,* Judge Wisdom notes that "[c]onsideration of legal arguments is especially appropriate on appeal from summary judgment. The rule against consideration of new issues derives primarily from the needs of judicial economy and the desirability of having parties present their claims in the court of first instance.... It also reflects a concern for avoiding prejudice to the parties." *La Quinta Motor Inns,* 689 F.2d at 990 (citing *Hormel v. Helvering,* 312 U.S. 552, 556–60, 61 S.Ct. 719, 721–23, 85 L.Ed. 1037 (1941) (further citations and internal quotation marks omitted)). In *McKnight,* a full-dress trial took place in the district court, involving the usual (substantial) expenditure of judicial resources. It is thus clear that the first policy cited by Judge Wisdom—the needs of judicial economy—would have been well served by a finding of waiver by GM. Whereas, by contrast, *Carroll* was an appeal from summary judgment, making waiver less appropriate.

That Gingras had nothing to lose by arguing waiver is further demonstrated by the fact that the *McKnight* appeal was not an instance where the attorney was obliged, as a tactical matter, to choose a manageable number of arguments from a longer list of possibilities, so as to be able to argue each thoroughly. *Cf. Reed–Union Corporation v. Turtle Wax, Inc.*, 77 F.3d 909, 911 (Easterbrook, J.). No, Gingras had only two principal arguments to make—one procedural (waiver), the other substantive (whether McKnight's § 1981 claims survived *Patterson*). Gingras does not assert—nor would it be reasonable to infer—that he declined to make a waiver argument in order to argue the substantive point more thoroughly. It is clear, rather, that adding a waiver argument would not have diminished the force of McKnight's substantive anti-*Patterson* argument, not even slightly. In these circumstances, based on Gingras' version of his conduct, the Court concludes that Gingras' rejection of a waiver argument was neither fully informed, nor reasonable, nor in the best interests of his client.

■ In accordance with the foregoing analysis, the Court finds that Gingras misses the mark when he asserts (1) that "whether [GM] waived its right to rely on *Patterson* was, at the very least, a debatable proposition among well-informed attorneys," (2) that he made an "informed judgment" based on all relevant legal principles, and therefore (3) his fateful decision was not actionable malpractice. *See* Defendants' Brief in Support at 22. It is settled, rather, that waiver and its discretionary nature are "elementary principles of law commonly known to well-informed attorneys." *Helmbrecht*, 122 Wis.2d at 113, 362 N.W.2d at 129. In the Court's view, an attorney owes it to his client to argue waiver whenever (as in *McKnight*) an opposing party fails to preserve an available argument at trial, then raises it for the first time on appeal.[13]

But even if the Court is wrong on the foregoing point, and the question whether to argue waiver in the *McKnight* appeal is properly characterized as an "unsettled area of the law," the Court still finds, in the circumstances of this case, that a reasonable and prudent attorney, after making an informed and "intelligent assessment" of the risks and the potential benefit to his client, would most certainly have elected to argue waiver. *See id.* The Court therefore finds as a matter of law that Gingras' decision not to assert waiver on the part of GM constituted a breach of his professional duty to McKnight. Accordingly, on its own motion, the Court grants McKnight summary judgment on negligence. *Id.*, 122 Wis.2d at 112, 362 N.W.2d at 128.

**B. Causation**

■ To prove causation, McKnight must show that, but for Gingras' failure to argue that GM had waived arguments based on *Patterson*, the court of appeals would have affirmed the district court's award of damages on McKnight's § 1981 claims. *See Helmbrecht*, 122 Wis.2d at 127 n. 14, 362 N.W.2d at 135 (quoting *General Accident Fire & Life Assur. Corp., Ltd. v. Cosgrove*, 257 Wis. 25, 42 N.W.2d 155 (1950)). Based on its analysis of the authorities cited in the parties' briefs, the Court finds as a matter of law that the plaintiff has met his burden on this issue. Accordingly, the Court grants McKnight's motion for partial summary judgment as to causation.

---

13. As to whether the argument was available at trial, Gingras makes much of Judge Posner's dicta in *McKnight* that the result in *Patterson* was "peculiar and unexpected," and the Eleventh Circuit's comment in *McGinnis* that "no one could have predicted the Supreme Court's resolution of the *Patterson* case." Defendants' Reply Brief, pp. 8–10. Based on these comments, Gingras appears to argue that GM could not have preserved argument based on *Patterson* at the trial level. This also misses the mark. It was not necessary to predict or anticipate the *precise* outcome in *Patterson* to preserve argument as to the scope of § 1981. All GM would have had to do was to assert in the district court that *Runyon* was slated for reconsideration (i.e., that the *Runyon* interpretation of the scope of § 1981 *might* be superseded) and, on that basis, move for a stay in the district court pending the outcome in *Patterson*. *See Mencia v. International Business Machines Corporation*, 1988 WL 110450 (D.Md.), a case which flatly contradicts Gingras' suggestion that GM was not in a position to preserve argument based on *Patterson*. *Accord McGinnis*, 918 F.2d at 1496.

In deciding whether the outcome of the *McKnight* appeal would have been different if Gingras had argued waiver, the appropriate focus is not what the Seventh Circuit panel that actually heard the case would have decided, but rather what a "reasonable judge" (or panel of judges) would have decided. *Helmbrecht*, 122 Wis.2d at 104–08, 362 N.W.2d at 124–26. In this sense, Wisconsin courts have turned what would otherwise be a question of fact into a question of law, in order to avoid the unseemly spectacle of a judge testifying—in an advisory fashion, throwing the weight of his office behind one of the malpractice litigants—as to what he would have done if the case in question had proceeded differently. *See id.*

To decide what a reasonable appellate panel would have decided had *McKnight* been argued differently, the Court must inquire what other judges or panels of judges have decided in similar circumstances, and why. In making this inquiry and decision, the Court is inclined to weigh antecedent cases on point more heavily than post-*McKnight* cases, but the latter are certainly relevant. This is especially so of *McGinnis*, where the court purposely and explicitly "answer[d] the [waiver] question Judge Posner found it unnecessary to confront [in McKnight]." 918 F.2d at 1497. It must be borne in mind also that a reasonable Seventh Circuit panel might, in its discretion, differ with the reasoning of cases from other circuits. Furthermore, while it is true that under *Helmbrecht* the Court may not give decisive weight to Judge Posner's dicta in *McKnight*, views expressed in that opinion are hardly irrelevant. Judge Fairchild's partial dissent in *McKnight* is also of some modest relevance.

In July, 1990, when the Seventh Circuit decided *McKnight*, it was of course established that there is a basic waiver rule in the Seventh Circuit, under which failure to press an argument before the district court would ordinarily result in a waiver of that argument. *See, e.g., Toney v. Burris*, 829 F.2d 622, 626 (7th Cir.1987). The Seventh Circuit had also adopted the general principle that

judicial decisions are to be applied retroactively to pending appeals. *See, EEOC v. Vucitech*, 842 F.2d 936, 941 (7th Cir.1988). *Carroll* had been also decided. There, the court applied the retroactivity principle over the waiver principle, and held that the defendant had not waived argument based on *Patterson*. *Mencia* was also available (though it is not cited or discussed in *Carroll*) and would likewise have been relevant to the waiver question. See note 13, *supra*. There were, in 1990, numerous other (marginally) relevant precedents, a number of which are discussed above in the Court's analysis of Gingras' lawyering.

After examining all the relevant decisional law, it is clear that a reasonable Seventh Circuit judge would focus on the one case precisely on point—*Carroll*—and consider whether the opinion's reasoning is persuasive.[14] This is what Judge Posner did, albeit in dicta. And while he did not have the benefit of briefing, *see* defendants' Brief in Support at 2, n. 1, Judge Posner strongly suggested that *Carroll* is unsound. On this point, the Court notes that Judge Fairchild's partial dissent takes no exception to Judge Posner's exegesis on waiver. *See McKnight*, 908 F.2d at 117–118 (Fairchild, J., concurring in part and dissenting in part).

To find that a waiver argument would have changed the outcome in *McKnight*, then, this Court must find that a reasonable, fully-briefed judge would *not* have followed *Carroll*. There is a strong basis for such a finding. This Court has had the benefit of briefing on the merits of *Carroll*, *McGinnis*, and a host of other relevant (and semi-relevant) cases. In regard to *Carroll*, the Court finds that the conclusion there that the plaintiff's waiver argument was "without merit" is not well explained. *See* note 9, *supra*, and accompanying text. As for *McGinnis*, the court there plainly had briefing on the question of waiver (which, given the opinion's citation to *McKnight*, presumably involved some treatment of *Carroll*). And the *McGinnis* court, by an eleven-to-one en banc majority, found waiver on the part of the

---

**14.** This is all a judge in the Seventh Circuit would do, since cases from other circuits are, of course, not binding precedent.

defendant. This Court, moreover, has found the dissenting opinion in *McGinnis* to be unpersuasive. *See* note 11, *supra.* Perhaps most importantly, the *McGinnis* court explained its reasoning more clearly than the *Carroll* court. *Cf. Weaver v. Casa Gallardo,* 922 F.2d 1515, 1519 (11th Cir.1991).

In short, the Court finds as a matter of law that a fully-briefed, reasonable panel of Seventh Circuit judges would have held in *McKnight* that *Carroll* should not be followed. Such a court would have found instead—had Gingras made the argument—that GM had waived its right to rely on *Patterson,* and thus the court would have affirmed the district court's award under § 1981. Accordingly, the Court grants McKnight's motion for partial summary judgment as to causation.

### CONCLUSION

Based on the reasoning and authorities cited in this opinion, and having accepted for present purposes Attorney Gingras' account of his professional conduct, the Court finds as a matter of law that Gingras was negligent in his representation of Plaintiff McKnight on appeal before the Seventh Circuit. The Court finds further as a matter of law that Attorney Gingras' negligence proximately caused McKnight to sustain damages, in an amount to be determined.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

(1) Defendants' Motion For Summary Judgment is DENIED.

(2) Plaintiff's Motion For Partial Summary Judgment is GRANTED.

(3) Summary judgment on the issue of liability is GRANTED in favor of the plaintiff.

(4) The parties shall, within thirty (30) days of the date of this Order, submit briefs on the issue of damages.

**SO ORDERED.**